# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 00-2284

———————

| | |
|---|---|
| Lee Ann Bennett,      * | |
|      * | |
|      Plaintiff - Appellant,      * | |
|      * | |
|      v.      * | Appeal from the United States |
|      * | District Court for the |
| C. R. Watters, individually and in      * | Eastern District of Arkansas. |
| his official capacity; City of      * | |
| Benton, Arkansas,      * | |
|      * | |
|      Defendants - Appellees.      * | |

———————

Submitted: February 12, 2001

Filed: August 14, 2001

———————

Before LOKEN, HEANEY, and BYE, Circuit Judges.

———————

LOKEN, Circuit Judge.

In this action, Lee Ann Bennett challenges her May 1999 termination as the records and fines clerk for the police department in Benton, Arkansas. The district court[1] granted summary judgment to the defendants, Chief of Police C.R. Watters and the City. Bennett appeals, arguing that the court erred in dismissing her procedural due

———————

[1]The HONORABLE GARNETT THOMAS EISELE, United States District Judge for the Eastern District of Arkansas.

process claim and her claim of age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1). We affirm.

On April 28, 1999, Bennett visited her physician, who advised that she take two weeks off from work due to a bladder infection, depression, and work-related anxiety. The doctor gave Bennett a note saying she should not work for two weeks "for medical reasons." Bennett sent the note to Chief Watters, consistent with Department policy. Watters approved her sick leave until May 7.

The following day, Bennett's immediate supervisor, Cissy Brown, called and told Bennett that an appointment had been scheduled for her with the Department's physician on April 30. After consulting her attorney, Bennett did not keep that appointment. She then received a phone message from Watters and did not return the call. Brown then called again and advised Bennett of another appointment with the Department's physician on May 4. She did not keep that appointment. On May 6, Watters sent Bennett a letter stating that her employment was terminated effective May 7 because she had missed one-half of her scheduled work days in 1999 due to illness, failed to attend two scheduled appointments with the Department's physician, violated a direct order to attend those appointments, and failed "to be reasonably accessible to communicate" with her superiors. This lawsuit followed.

## I. The Due Process Claim.

Bennett argues that her abrupt termination without prior notice or an opportunity to be heard violated her Fourteenth Amendment right to procedural due process. This federal constitutional claim depends upon Bennett having a property interest in continued employment under state law. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985). A property interest arises from a "legitimate claim of entitlement" to continuing employment. Board of Regents v. Roth, 408 U.S. 564, 577 (1972). A public employee has a property interest when there are "contractual or

statutory limitations on the employer's ability to terminate an employee," such as a contractual right to be terminated only for cause. Winegar v. Des Moines Indep. Cmty. Sch. Dist., 20 F.3d 895, 899 (8th Cir. 1994).

As a "civilian" employee of the Benton Police Department, Bennett was not part of the civil service system applicable to uniformed police officers. See ARK. CODE ANN. § 14-51-308. For its non-civil service employees, the City is an at-will employer. Under Arkansas law, an at-will employee may be terminated at any time, with or without cause, but the Supreme Court of Arkansas has recognized exceptions to the at-will doctrine. Whether Bennett had a property interest protected by due process turns on whether one of those exceptions applies. See Johnson v. City of W. Memphis, 113 F.3d 842, 843-44 (8th Cir. 1997).[2] Bennett argues that two of those exceptions apply to create the necessary property interest.

**A. The Employee Policy Manual Exception.** Many employers distribute employee handbooks or policy manuals that may contain provisions regarding employee discipline and termination. In recent years, the Supreme Court of Arkansas has considered when such a policy manual will be held to modify the employment at-will relationship. "[W]here an employee relies upon a personnel manual that contains *an express provision* against termination except for cause he may not be arbitrarily

---

[2]Prior Eighth Circuit cases held that Arkansas public employees lacking fixed-term contracts have no property interest in continued employment "*even if* there is a provision in the employment contract that an employee will not be discharged except for good cause." Stow v. Cochran, 819 F.2d 864, 868 (8th Cir. 1987) (emphasis in original), quoting Drake v. Scott, 812 F.2d 395, 400 (8th Cir. 1987). However, these cases did not take into account the contemporaneous decision in Gladden v. Arkansas Children's Hospital, 728 S.W.2d 501, 505 (Ark. 1987), which clarified that there are exceptions to the Arkansas employment at-will doctrine. After Gladden, we believe that Johnson v. City of West Memphis properly framed this issue under Arkansas law -- a public employee has a property interest if he or she may only be terminated for cause. See Robinson v. Langdon, 970 S.W.2d 292, 297 (Ark. 1998).

discharged in violation of such a provision." Gladden, 728 S.W.2d at 505(emphasis in original), followed in Robinson, 970 S.W.2d at 297; Crain Indus., Inc. v. Cass, 810 S.W.2d 910, 913 (Ark. 1991); and Smith v. American Greetings Corp., 804 S.W.2d 683, 685-86 (1991). Bennett argues that section 42 of the Benton Police Department Policy and Procedures Manual (the "Policy Manual") is such a provision.

In this regard, section 42 is not a model of clarity. Its ambiguity may be the result of bad drafting, or it may reflect the complexity of writing a policy manual that applies to both civil service and non-civil service employees. Section 42 is entitled Disciplinary Procedure. It begins with a general statement of policy -- "if possible," the Department will "use progressive disciplinary action to bring about change" instead of terminating a productive employee when behavior or performance problems occur. Part I, entitled "Procedures," then declares:

> A. When discipline is deemed appropriate, this agency will use a progressive system, when practicable.
> B. Furthermore, discipline shall be for cause and shall follow the basic concepts of due process.
>       *   *   *   *   *
> D. Supervisors must ensure that fair enforcement decisions are made in the use of disciplinary or termination action. Fair enforcement incorporates the concepts of equality and equity. . . . Whatever the administrative action, its amount and degree must be based on equity.

"Equity" is defined in Part II and repeats Parts I.A. and I.B., which refer to progressive discipline, discipline for cause, and due process. The steps of progressive discipline are set forth in Part III. Bennett argues that these provisions expressly restrict the City to disciplining her only for cause, thereby modifying her at-will employment and creating a property interest that is entitled to procedural due process protection under

federal law.  But this argument ignores Part IV of section 42, which is entitled "Termination" and which provides in relevant part:

> All members are subject to termination for the following general conditions:
>
>     \*   \*   \*   \*   \*
>
> D.    <u>Termination with fault:</u>  Examples include, but are not limited to, insubordination . . . .
>
> E.    <u>Termination without fault:</u>  Examples include, but are not limited to
>
>     \*   \*   \*   \*   \*
>
> 3. decision of the Chief of Police as permitted and retained by law.

Like the district court, we conclude that Part IV.E. of section 42, and particularly Part IV.E.3., defeats Bennett's claim of a property interest under Arkansas law.  To modify her at-will employment, the Policy Manual must contain "*an express provision* against termination except for cause."  <u>Gladden</u>, 728 S.W.2d at 505 (emphasis in original).  "[A]n implied provision against the right to discharge will not be sufficient to invoke the exception."  <u>St. Edward Mercy Med. Ctr. v. Ellison</u>, 946 S.W.2d 726, 729 (Ark. App. 1997).  Here, section 42 expressly provides that *discipline* "shall be for cause," but then expressly provides that *termination* may be without cause at the discretion of the Chief of Police.  A property interest, for federal due process purposes, is the right to continued employment.  Whether the employer may terminate without cause is the critical inquiry.  That the employee has a contractual right to some form of disciplinary procedure is of no significance if employment itself is terminable at-will.  <u>Stow</u>, 819 F.2d at 866-68. Thus, section 42 of the Policy Manual does not provide Bennett the property interest that is necessary to support her procedural due process claim.

**B. The Public Policy "Exception."** An at-will employee who is terminated in violation of well-established Arkansas public policy has a cause of action for wrongful termination. The action has been termed an "exception" to the employment-at-will doctrine. See Smith, 804 S.W.2d at 684. Seeking to apply this exception to public employees, Bennett argues that her right to procedural due process was violated because her termination violated the Arkansas public policy that protects an employee's medical privacy by limiting when an employer may insist on a second medical opinion. The district court concluded that Bennett's discharge did not fall within the limited public policy exception. We agree, and we further note a more fundamental flaw in her contention. The right not to be discharged in violation of the State's public policy is not a property interest for procedural due process purposes. It is a substantive right, the violation of which gives rise to a substantive claim under state law, just as the right not to be discharged on account of race, sex, or age gives rise to a substantive claim under federal law. See Drake v. Scott, 812 F.2d at 400-01. Here, Bennett's complaint asserted a wrongful discharge claim under state law, but that claim is not pursued on appeal.

## II. The Age Discrimination Claim.

Bennett next argues that the district court erred in granting summary judgment dismissing her age discrimination claim. Because Bennett presented no direct evidence of age discrimination, we analyze her claim under the burden shifting test established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The City concedes that Bennett established a prima facie case of age discrimination -- she is within the protected age group, she met applicable job qualifications, and she was replaced by a twenty-five-year-old employee. Compare Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2106 (2000). The City produced evidence that its reasons for terminating Bennett were legitimate and nondiscriminatory -- excessive sick leave, disobeying direct orders to see the Department's physician, and refusing to communicate with her employer while on sick

leave.  See, e.g., Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1135 (8th Cir. 1999). To survive the City's motion for summary judgment, Bennett must then produce sufficient evidence that the reasons provided were a pretext for age discrimination -- proof that the City's "proffered explanation is both incorrect and that discrimination is the true explanation" for her termination.  Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 777 (8th Cir. 1995).

Like the district court, we conclude that Bennett failed to present sufficient evidence of pretext.  Bennett admitted that she intentionally disobeyed her supervisor's orders to see the Department physician.  She also admitted that she intentionally failed to return Chief Watters' phone call and did not otherwise communicate with the Department about this sick leave issue.  To prove pretext for age discrimination, Bennett relies on Department hiring statistics showing that a large percentage of employees hired after Watters became Chief were under forty-years old, and on the alleged transition to younger workers in her division.  However, as the district court observed, it is not surprising to find older workers moving out of a work force and younger workers moving in.  See Holley v. Sanyo Mfg., Inc., 771 F.2d 1161, 1166 (8th Cir. 1985).  Bennett further relies on her assertion that Chief Watters has not challenged the use of sick leave by younger employees nor required them to see the Department physician.  However, she presented no proof that these younger employees were "similarly situated in all relevant respects."  Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994).  In short, Bennett presented no evidence creating a reasonable inference that the legitimate non-discriminatory reasons given for her termination were a pretext for intentional age discrimination.

The judgment of the district court is affirmed.

A true copy.

Attest:

      CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.