# United States Court of Appeals

### For the Eighth Circuit

_____

No. 16-1371

_____

Robert J. Parker

*Plaintiff - Appellant*

v.

Crete Carrier Corporation

*Defendant - Appellee*

------------------------------

American Trucking Association

*Amicus on Behalf of Appellee*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: September 21, 2016
Filed: October 12, 2016

_____

Before LOKEN, GRUENDER, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Crete Carrier Corporation required its truck drivers with Body Mass Indexes (BMIs) of 35 or greater to get medical examinations to determine whether they had obstructive sleep apnea. Crete ordered driver Robert J. Parker to undergo an examination because his BMI was over 35. Parker refused. Crete stopped giving Parker work. Parker sued Crete, alleging it violated the Americans with Disabilities Act (ADA) by requiring the examination and discriminating on the basis of a perceived disability. The district court[1] granted summary judgment to Crete. Parker appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Crete hired Parker as an over-the-road truck driver in 2006. As a driver of a commercial motor vehicle for a motor carrier, Parker was bound by regulations issued by the U.S. Department of Transportation's Federal Motor Carrier Safety Administration (FMCSA). *See* **49 C.F.R. § 391.1(a)**. Under the regulations, drivers must get medical examinations from FMCSA-certified examiners every two years. **49 C.F.R. §§ 391.43(a)**, **391.45(b)(1)**. Drivers cannot operate commercial motor vehicles unless an examiner certifies them as physically qualified to do so. **49 C.F.R. § 391.41(a)**. During this examination—a "DOT physical"—the examiner measures height and weight; takes a health history; tests vision, hearing, blood pressure, and urine; and physically examines numerous body systems. *See* **49 C.F.R. § 391.43**. To receive certification, a driver must not have impairments that interfere with driving. *See* **49 C.F.R. § 391.41(b)**.

Two FMCSA advisory committees—the Medical Review Board (MRB) and Motor Carrier Safety Advisory Committee (MCSAC)—have recommended that FMCSA change its certification standards to reduce the risks from drivers who have

---

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

obstructive sleep apnea. Individuals with sleep apnea temporarily stop breathing during sleep. The most common form of sleep apnea is obstructive sleep apnea, where tissues around the upper respiratory tract relax and physically block the airway.

In 2008, the MRB found that obstructive sleep apnea causes daytime sleepiness, making drivers more likely to have accidents. It recommended testing some drivers for obstructive sleep apnea. **Med. Review Bd., Fed. Motor Carrier Safety Admin., U.S. Dep't of Transp.**, *January 28, 2008 MRB Meeting Summary* 2-11 (2008), *available at* https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/docs/ Fin_Meet_Min_Jan28_2008MRB_Meet_Revised11-24-09.pdf. In February 2012, the MRB and MCSAC recommended that drivers with BMIs over 35 receive only conditional DOT certification and undergo an additional examination for obstructive sleep apnea. **Motor Carrier Safety Advisory Comm. & Med. Review Bd., Fed. Motor Carrier Safety Admin., U.S. Dep't of Transp.,** *MCSAC and MRB Task 11-05 Final Report on Obstructive Sleep Apnea* 1-2 (2012), *available at* https://www.fmcsa.dot.gov/february-6-2012-mcsac-and-mrb-task-11-05-final-report-obstructive-sleep-apnea-osa. They noted that obstructive sleep apnea can be diagnosed by three methods. *Id.* at 3. The "more comprehensive" method is in-laboratory polysomnography, an "in-lab sleep study." *Id.* In-lab sleep studies are conducted at sleep centers, where staff put electrodes on patients' bodies and observe and record them while they sleep.

The MRB has since changed its recommendations. In 2016, it recommended sleep studies for drivers who either (1) have BMIs of 40 or above, or (2) have BMIs of 33 or above plus additional risk factors. **Med. Review Bd., Fed. Motor Carrier Safety Admin., U.S. Dep't of Transp.,** *Draft Task 16-01 Discussion Notes* (2016), *available at* https://www.fmcsa.dot.gov/advisory-committees/mrb/draft-task-16-01-discussion-notes-8232016. It now calls in-lab sleep studies the "preferred" method of diagnosis. *Id.*

In 2010, Crete began a sleep apnea program based primarily on MRB and MCSAC recommendations. The program required drivers at risk for obstructive sleep apnea to undergo in-lab sleep studies. Drivers found to have obstructive sleep apnea were placed on a treatment regimen. Crete implemented the program in stages, first at larger terminals and then at smaller facilities. Crete added Parker's facility in July 2013. That month, Crete told Parker that, due to his size, it was scheduling him for an in-lab sleep study. Crete required an in-lab sleep study if either (1) the driver's BMI was 35 or above, or (2) the driver's physician recommended a sleep study. At Parker's most recent DOT physical, his BMI was over 35.

On July 11, 2013, Parker visited a certified physician assistant not affiliated with Crete. Eleven days later, the PA-C wrote a prescription stating, in whole, "I do not feel it is medically necessary for Robert to have a sleep study." The next week, Parker refused Crete's required sleep study. Crete took Parker out of service. The next day, Parker gave the PA-C's prescription to Crete. Crete did not reinstate Parker.

Parker sued Crete, alleging it required a medical examination violating 42 U.S.C. § 12112(d)(4)(A), and discriminated against him because it regarded him as having a disability, violating 42 U.S.C. § 12112(a). During discovery, Crete submitted the report of Dr. Richard J. Schwab, an expert on sleep apnea. Parker moved in limine to exclude his testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Parker moved for partial summary judgment. Crete moved for summary judgment. The district court denied Parker's summary judgment and *Daubert* motions, and granted summary judgment to Crete.

II.

A district court's decision to admit expert testimony stands unless it abused its discretion. ***Russell v. Whirlpool Corp.***, 702 F.3d 450, 455 (8th Cir. 2012). Federal Rule of Evidence 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

**Fed. R. Evid. 702**. The district court found that the report met Rule 702's standards because of Dr. Schwab's "specialized knowledge in the field of obesity and obstructive sleep apnea, his creation and review of a significant amount of peer-reviewed scientific literature, his extensive training in the field, and his observations in reading 700 sleep studies annually." The district court then relied on Dr. Schwab's report for: the danger posed by drivers with obstructive sleep apnea, the usefulness of obesity and specific BMIs in screening drivers for sleep studies, the validity of sleep studies for diagnosing obstructive sleep apnea, and the availability of treatment for obstructive sleep apnea.

Parker argues that Dr. Schwab lacked sufficient data to diagnose him. He also contends that Dr. Schwab's opinion was unreliable because Dr. Schwab said a sleep study is needed to confirm or refute an obstructive sleep apnea diagnosis and Dr. Schwab did not conduct a sleep study of Parker. These arguments misunderstand Dr. Schwab's report. He stated that because Parker had four risk factors for obstructive sleep apnea (hypertension, snoring, obesity, and polycythemia), he likely had the condition. Parker does not support his claims that this statement was unreliable. In any event, the district court did not rely on that part of Dr. Schwab's report in granting summary judgment. Parker does cite articles that he claims "have challenged the reliability of" Dr. Schwab's methodology. These articles, Parker says, differ from Dr. Schwab's report on questions of the prevalence of obstructive sleep apnea and the reliability of BMI as a sleep apnea predictor. Even accepting Parker's characterization of these articles, they do not suggest the district court abused its

discretion. The fact that others might disagree with Dr. Schwab does not mean his opinions are inadmissible under Rule 702. "[I]t is not the province of the court to choose between the competing theories when both are supported by reliable scientific evidence." *Kuhn v. Wyeth, Inc.*, 686 F.3d 618, 633 (8th Cir. 2012). Because Parker does not show an abuse of discretion, the district court properly denied Parker's motion.

## III.

A grant of summary judgment is reviewed de novo. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). Crete is entitled to summary judgment if, viewing the facts most favorably to Parker, there is no genuine issue of material fact. *See id.*

## A.

The ADA prohibits employers from "requir[ing] a medical examination . . . unless such examination . . . is shown to be job-related and consistent with business necessity." **42 U.S.C. § 12112(d)(4)(A)**. When an employer requires a medical exam of its employees, the employer has the burden of showing that the exam is job-related and that "the asserted 'business necessity' is vital to the business and the request for a medical examination or inquiry is no broader or more intrusive than necessary." *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007). "[C]ourts will readily find a business necessity if an employer can demonstrate . . . a medical examination or inquiry is necessary to determine . . . whether the employee can perform job-related duties when the employer can identify legitimate, non-discriminatory reasons to doubt the employee's capacity to perform his or her duties." *Id.*, *quoting Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 98 (2d Cir. 2003) (alterations in original). "The examination or inquiry need not be the *only way* to achieve a business necessity, but it must be a reasonably effective method to achieve the employer's goals." *Id.*

-6-

According to Parker, Crete failed to consider his individual characteristics before mandating the sleep study. But the text of § 12112(d)(4)(A) does not require employers to consider each employee's unique characteristics before requiring a medical exam. Neither does the statutory context. To the contrary, exams of *all* new employees are permitted under certain circumstances. *See* **42 U.S.C. § 12112(d)(3)**. The ADA permits employers to require a class of employees to get medical exams. *See* **Conroy**, 333 F.3d at 100-01.

When an employer requires a *class* of employees to submit to a medical exam, it also "must show that it has reasons consistent with business necessity for defining the class in the way that it has." **Conroy**, 333 F.3d at 101. An employer satisfies this burden by showing a "reasonable basis for concluding" that the class poses a genuine safety risk and the exam requirement allows the employer to decrease that risk effectively. *See id.* A class may include some individuals who testing reveals do not pose a safety risk. And it may exclude others who testing would reveal do pose a safety risk. All that is required is that "the employer has defined the class of employees reasonably." *See id.*

Crete required a class of employees—drivers with BMIs of 35 or above—to submit to an in-lab sleep study, a medical exam. Crete established the following facts: Untreated obstructive sleep apnea tends to impair driving skills, increasing the risk of motor vehicle accidents by 1.2- to 4.9-fold. A sleep study is the only way to confirm or rule out an obstructive sleep apnea diagnosis. An in-lab sleep study is the gold standard for diagnosing obstructive sleep apnea. Obesity is the primary anatomic risk factor for obstructive sleep apnea. A BMI of approximately 33 is the optimal cut-off to identify subjects likely to have obstructive sleep apnea. Screening with a BMI above 33 has a sensitivity of 76.9% (meaning 76.9% of people with obstructive sleep apnea have a BMI above 33) and a specificity of 70.5% (meaning 70.5% of people who do not have the condition do not have a BMI above 33). Obstructive sleep apnea can be treated, decreasing the risk of motor vehicle accidents.

Parker has offered no evidence contrary to these facts, nor anything that would lead a reasonable factfinder to doubt them.

By the undisputed facts, the sleep study requirement is job-related because it deals with a condition that impairs drivers' abilities to operate their vehicles. It is consistent with business necessity: An examination is necessary to determine whether an individual has obstructive sleep apnea, a condition that poses a public safety hazard by increasing the risk of motor vehicle accidents. *See* **Thomas**, 483 F.3d at 527. And Crete had reasons to suspect that Parker had sleep apnea, given his BMI. The in-lab sleep study is no broader or more intrusive than necessary because an examination is needed to diagnose obstructive sleep apnea and an in-lab sleep study is the best way to diagnose it. Crete was reasonable to define the class as drivers with BMIs of 35 or above because (1) it has a reasonable basis for concluding that class poses a safety risk given the correlation between high BMIs and obstructive sleep apnea, and (2) the sleep study requirement allows Crete to decrease the risk posed by that class by ensuring that drivers with sleep apnea get treatment.

Parker argues that even if Crete could require some class to undergo sleep studies, it violated the ADA by including him in it. He claims that four characteristics make his inclusion unreasonable. First, he had no documented sleep issues at work. Second, he received a DOT certification. Third, he was awarded in 2012 for five years of accident-free driving, and named a top trainer. Fourth, his personal medical provider did not feel a sleep study was medically necessary. He concludes that these characteristics removed him from any class that Crete could validly require to undergo a sleep study. Parker essentially asserts that Crete defined the class unreasonably: Rather than defining the class as "drivers with BMIs of 35 or above," it should have defined the class as "drivers with BMIs of 35 or above unless they have (1) no documented sleep issues, (2) DOT certification, (3) accident-free and top-trainer awards, and (4) prescriptions from medical providers who believe sleep studies not necessary for them." But the characteristics that Parker points to do not undermine Crete's reasonable basis for concluding he poses a genuine safety risk.

-8-

None of the characteristics establish that he does not suffer from sleep apnea. Crete carries its burden of showing it defined the class reasonably. The district court correctly granted Crete summary judgment on Parker's medical-examination claim.

## B.

The ADA prohibits employers from discriminating against employees "regarded as having . . . an impairment." *See* **42 U.S.C. §§ 12102(1)(C)**, **12112(a)**. A plaintiff alleging regarded-as discrimination may make out a prima facie case using the *McDonnell Douglas* burden-shifting framework. *See* ***Norman v. Union Pac. R.R. Co.***, 606 F.3d 455, 459 (8th Cir. 2010). Parker must first show (1) Crete regarded him as having a disability, (2) he had the qualifications to perform the essential functions of his position with or without reasonable accommodation, and (3) Crete took an adverse action due do his perceived disability. *See* ***id.*** If Parker succeeds in establishing a prima facie case, the burden shifts to Crete to proffer a legitimate, nondiscriminatory reason for the adverse action. *See* ***Kratzer v. Rockwell Collins, Inc.***, 398 F.3d 1040, 1044 (8th Cir. 2005). If Crete makes such a proffer, the burden shifts back to Parker to show that Crete's stated reason is a pretext. *See* ***id.***

Parker argues that Crete regarded him as having obstructive sleep apnea, an impairment. The district court assumed without deciding that Parker satisfied the first three parts of his prima facie case. The burden then shifts to Crete. Crete carries its burden. It says it suspended Parker because he refused a sleep study. That requirement, for the reasons discussed, is legitimate and non-discriminatory. The burden shifts back to Parker to show Crete's stated reason is pretext. Parker does not make such a showing. In fact, Parker says on appeal that Crete's stated reason is its genuine reason: "[Crete] did not have any cause, other than to retaliate against [Parker] for asserting his rights under the ADAAA to refuse to participate in an unlawful medical examination, to discontinue providing [him] work." Parker is right that the only conceivable reason that Crete suspended him is that he failed to comply with Crete's sleep-study requirement. But, as discussed, Parker is wrong that the

sleep study requirement was unlawful. The undisputed evidence shows that Crete suspended Parker for refusing to submit to a *lawful* medical examination. That does not violate the ADA. Since Crete's stated reason for suspending him was not pretext, Parker's claim fails.

* * * * * * *

The judgment of the district court is affirmed.

_____