# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1650

_____

Paul Voss

*Plaintiff - Appellant*

v.

Housing Authority of the City of Magnolia, Arkansas; and Richard Wyse, Individually and in his Official Capacity as Executive Director of Housing Authority of the City of Magnolia, Arkansas

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Arkansas - El Dorado Division

_____

Submitted: September 27, 2018
Filed: February 25, 2019

_____

Before COLLOTON, GRUENDER, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

Appellant Paul Voss resigned from his position as maintenance supervisor at the Housing Authority of the City of Magnolia, Arkansas ("Housing Authority") and soon after filed a lawsuit against the Housing Authority and his direct supervisor, Richard Wyse, asserting various discrimination, retaliation, and constitutional claims.

Voss appeals the district court's[1] order granting summary judgment in favor of the Housing Authority and Wyse.  We affirm.

## I.  Background

Voss worked at the Housing Authority for approximately fourteen years before resigning his position in May 2014.  When he resigned, Voss was a maintenance supervisor and was responsible for the technical supervision of maintenance activities for low-rent housing developments.

In February 2014, based on a recommendation from an Arkansas state funding agency, the Housing Authority directed drug testing of its employees.  The initial screening results indicated Voss tested positive for "opiates/morphine."  In March, Wyse met with Voss regarding the results of the drug test.  Wyse told Voss he was suspended from employment without pay after Voss refused to provide information requested by Wyse regarding his use of an opiate.

The day after meeting, Voss provided Wyse a copy of a prescription for hydrocodone.  Wyse asked Voss via email to provide a letter from his healthcare professional acknowledging the hydrocodone prescription and explaining how and when Voss took the prescription, as well as whether any side effects of the prescribed medication could hinder Voss's ability to perform his work duties.  Wyse also asked Voss to provide a complete list of all prescription medications he was taking so Wyse could confirm the hydrocodone was what caused the positive test, or alternatively a clearance letter from Voss's healthcare professionals addressing the issue.  Wyse soon sent a follow-up letter asking Voss again to have his healthcare providers write a letter of acknowledgment of the prescribed hydrocodone, "describ[ing] how and

_____

[1]The Honorable Susan O. Hickey, United States District Judge for the Western District of Arkansas.

when to take this said prescription, along with any side effects that could hinder your ability to perform your duties to oversee the maintenance of the Housing Authority." There is no record of Voss responding to these two communications.

Throughout April and part of May 2014, the Housing Authority communicated with Voss on several occasions through its attorneys. During these communications, the Housing Authority told Voss that it had reinstated Voss's pay retroactively[2] and made sure his health insurance did not lapse during his suspension. By May, the Housing Authority also dropped its demand that Voss provide more information from his healthcare providers and Voss agreed to return to work.

On May 14, Voss ultimately returned to work. During a meeting with Wyse after his return, Voss stated that he was still taking the hydrocodone. Voss also told Wyse of certain medical conditions he had, including post-traumatic stress disorder, but stated these conditions would not affect his ability to do his job. Wyse informed Voss that he could not operate the Housing Authority's vehicles and equipment until Voss provided information from his doctor describing how and when to take the prescription, along with any side effects that could hinder Voss's ability to perform his duties. Wyse also informed Voss that, because of funding issues, Voss would now need pre-approval from Wyse before placing any orders. Wyse believed there were plenty of other general office duties that Voss could perform as part of his job.

On Monday, May 19, Voss submitted a resignation letter. In the letter, Voss stated he "refuse[d] to work any longer in the retaliatory environment that has existed between me and most of the rest of the [Housing Authority] staff, especially [Wyse], since the drug test was done in February."

---

[2]The Housing Authority increased Voss's salary effective March 16, 2014. It is unclear when this salary increase was communicated to Voss.

In January 2015, after filing a discrimination charge with the U.S. Equal Employment Opportunity Commission ("EEOC") and obtaining a right-to-sue letter,[3] Voss filed a lawsuit against the Housing Authority and Wyse, both individually and in his official capacity as Executive Director. Voss alleged numerous claims, including violations of the Americans with Disabilities Act (the "ADA") and Title VII of the Civil Rights Act of 1964 ("Title VII"), all of which were dismissed by the district court except for Voss's "ADA claim against the Housing Authority; all of [Voss's] procedural due process claims based on alleged deprivation of a constitutionally protected property interest, and [Voss's] Title VII Retaliation claim against the Housing Authority."

Following discovery, the Housing Authority and Wyse filed a motion for summary judgment on the remaining claims. The district court granted them summary judgment and dismissed the case with prejudice. The district court held some of Voss's claims were not properly exhausted and others failed as a matter of law on the merits. Voss filed a motion under Fed. R. Civ. P. 59(e), asking the district court to reconsider its summary judgment order and generally arguing the district court misapplied the legal standard. The district court denied Voss's motion. Voss now appeals.

## II. Analysis

On appeal, Voss challenges the district court's summary judgment order and denial of his motion to alter or amend the judgment. We review the district court's

---

[3]Roughly a week before returning to work, Voss had submitted a charge of discrimination to the EEOC, alleging the Housing Authority discriminated against him based on his disability. The same date as his resignation, Voss submitted an amended charge of discrimination to the EEOC, alleging both discrimination based on disability and retaliation. On September 30, 2014, the EEOC issued Voss a right-to-sue letter.

grant of summary judgment de novo, viewing all evidence and reasonable inferences in the light most favorable to Voss. *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). We review the district court's denial of Voss's motion to reconsider filed under Fed. R. Civ. P. 59(e) for an abuse of discretion. *See Schoffstall v. Henderson*, 223 F.3d 818, 827 (8th Cir. 2000).

## A. Exhaustion

We begin our analysis by considering Voss's challenge to the district court's holding that he failed to exhaust all of his claims other than his disability discrimination and constitutional due process claims. The ADA requires a plaintiff to file a complaint with the EEOC before filing a suit in federal court. *See Sellers v. Deere & Co.*, 791 F.3d 938, 943 (8th Cir. 2015). "'Each incident of discrimination and *each retaliatory adverse employment decision* constitutes a separate actionable unlawful employment practice' that *must be individually addressed* before the EEOC." *Id.* at 943 (emphasis added) (quoting *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 851 (8th Cir. 2012) (per curiam)).

The only claim Voss mentions in his briefing on appeal with regard to exhaustion is one for constructive discharge.[4] The totality of his exhaustion argument is that his "[a]mended EEOC charge states that the Defendants retaliated against him by revoking his duties and that the adverse action was ongoing. That same ongoing action is what constituted the constructive discharge." But Voss's assertion regarding

---

[4]Voss does not reference his Title VII, hostile work environment, or demotion claim, and does not develop any arguments as to how the district court erred as to these claims in its exhaustion analysis. Consequently, like the district court we conclude Voss abandoned these claims. *See Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 931 (8th Cir. 2011) (holding the appellant waived a challenge to the district court's conclusion that she failed to exhaust her administrative remedies because she did not make any supporting arguments on appeal).

the contents of the EEOC charge is not accurate, as it says *nothing* about the Housing Authority revoking his duties. Instead, the only adverse action he alleged in his charge to the EEOC was his placement on suspension and the threat of discharge. By not including in his EEOC charge the adverse acts which he maintains forced him to resign, Voss failed to administratively exhaust his constructive discharge allegation.

## B. ADA Discrimination Claim

The district court determined that summary judgment in favor of the Housing Authority was warranted on Voss's disability discrimination claim because he did not establish a prima facie case of discrimination. We agree.

Employers may not discriminate against employees regarded as having a disability. *See Parker v. Crete Carrier Corp.*, 839 F.3d 717, 724 (8th Cir. 2016) (citing 42 U.S.C. §§ 12102(1)(C), 12112(a)). "A plaintiff alleging regarded-as discrimination may make out a prima facie case using the *McDonnell Douglas* burden-shifting framework." *Id.* (referring to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

To survive summary judgment, it is first Voss's burden to make a prima facie case of regarded-as-disabled discrimination by showing: (1) the Housing Authority regarded him as having a disability, (2) he was qualified to perform the essential functions of his job with or without reasonable accommodation, and (3) the Housing Authority took adverse action due to his perceived disability. *See id.* If Voss succeeds, the burden of production shifts to the Housing Authority "to proffer a legitimate, nondiscriminatory reason for the adverse action." *Id.* If such a proffer is made, the burden of production returns to Voss to demonstrate the articulated reason was a pretext for discrimination. *See id.*

-6-

While the Housing Authority and Wyse bore the initial burden of demonstrating the basis for their motion and identifying the portions of the record they believe show an absence of a genuine issue of material fact, upon doing so Voss was obliged to "come forward with 'specific facts showing that there [was] a genuine issue for trial.'" *Torgerson*, 643 F.3d at 1042 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*, 475 U.S. 574, 587 (1986)). The existence of "some metaphysical doubt as to the material facts" is not enough to defeat a properly supported motion for summary judgment. *Id.* (quoting *Matsushita*, 475 U.S. at 586).

In the case at bar, the district court reasoned summary judgment was appropriate, in part, because Voss could not show that he suffered an adverse employment action due to a perceived disability. Thus, he failed to satisfy the third element of his prima facie case. The district court rejected Voss's argument that his suspension could qualify as an adverse action because there was no evidence that Wyse knew of any possible disability before Voss returned to work on May 14 and explained his medical issues to Wyse.

We agree with this assessment. Assuming without deciding that Voss's paid suspension even qualifies as an adverse action,[5] the fact the suspension concluded *before* Wyse had possible reason to suspect Voss might be disabled eliminates the possibility of the third element being satisfied.

---

[5]Our case law indicates Voss's suspension does not qualify as an adverse act. *See Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 891–92 (8th Cir. 2005) (holding the employer's act of putting an employee on administrative leave pending an investigation did not qualify as an adverse employment action for purposes of a Title VII claim where the employee maintained his pay, grade, and benefits during his leave, and was restored to his position promptly after the investigation concluded). However, it is unnecessary for us to decide the issue since Voss's claim fails on other grounds.

We reject Voss's argument that a genuine dispute exists as to whether Wyse regarded Voss as disabled before May 14 based on Wyse's knowledge that Voss failed the drug test on account of his prescribed hydrocodone. The fact Wyse knew Voss was taking hydrocodone by itself is not enough evidence to infer Wyse regarded Voss as disabled as that term is defined in the ADA.

The Housing Authority's request to Voss for a letter from his healthcare provider to establish he could still safely perform his work duties does not change our conclusion. Nothing in the record indicates this request was made because there was concern *a disability* prevented Voss from performing aspects of his job. Instead, the only reasonable inference from the record is that the Housing Authority was concerned as to whether Voss's medication interfered with his ability to safely perform job-related tasks.

Finally, we reject Voss's contention that the Housing Authority took adverse acts *after* his meeting with Wyse by putting some restrictions on his work. As discussed above, Voss did not raise any of these acts in his EEOC charge, and thus they are not exhausted. *See Sellers*, 791 F.3d at 943 (explaining each retaliatory adverse employment decision must be individually addressed before the EEOC). Even if they were exhausted, none of these acts were sufficiently adverse to satisfy Voss's burden. *See Spears v. Mo. Dep't of Corr. & Human Res.*, 210 F.3d 850, 853–54 (8th Cir. 2000) (holding a job transfer involving only minor changes in working conditions without a reduction in pay or benefits is not an adverse action); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994) (holding a reassignment without a diminution in title, salary, and benefits created no material disadvantage and thus was not an adverse employment action). We affirm the district court's grant of summary judgment on Voss's ADA discrimination claim.

### C. Procedural Due Process Claim

We next address Voss's argument that the district court erred by granting summary judgment to the Housing Authority and Wyse on his constitutional procedural due process claim. In order to prevail, Voss must show he possessed a property interest in his employment pursuant to Arkansas law. *See Bennett v. Watters*, 260 F.3d 925, 927 (8th Cir. 2001) (analyzing a federal due process claim based on Arkansas law regarding entitlement to continued employment). He cannot do so.

"A property interest arises from a 'legitimate claim of entitlement' to continuing employment." *Id.* (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). "A public employee has a property interest when there are 'contractual or statutory limitations on the employer's ability to terminate an employee,' such as a contractual right to be terminated only for cause." *Id.* (quoting *Winegar v. Des Moines Indep. Cmty. Sch. Dist.*, 20 F.3d 895, 899 (8th Cir. 1994)).

Under Arkansas law, an employer may generally terminate an at-will employee such as Voss without cause. *See Crawford Cty. v. Jones*, 232 S.W.3d 433, 438 (Ark. 2006). Two exceptions exist to the Arkansas at-will doctrine: "(1) where an employee relies upon a personnel manual that contains an express provision against termination except for cause; and (2) where the employment agreement contains a provision that the employee will not be discharged except for cause, even if the agreement has an unspecified term." *Id.* Neither exception is applicable here.

Voss unsuccessfully attempts to evade this result by pointing to a statement in a policy manual that the Housing Authority was an "equal opportunity employer" and that "[a]ll personnel actions affecting qualified employees and applicants for employment will be taken without regard to age, race, creed, color, sex, handicap, religion . . . ." But when an employee relies on a personnel manual to attempt to

modify at-will employment, Arkansas law dictates the manual "must contain '*an express provision* against termination except for cause.'" *Bennett*, 260 F.3d at 929 (quoting *Gladden v. Ark. Children's Hosp.*, 728 S.W.2d 501, 505 (Ark. 1987)). "[A]n implied provision against the right to discharge will not be sufficient to invoke the exception." *Id.* (alteration in original) (quoting *St. Edward Mercy Med. Ctr. v. Ellison*, 946 S.W.2d 726, 729 (Ark. App. 1997)). The equal opportunity portion of the employee manual contains no express provision forbidding termination without cause and it therefore cannot serve as the basis for a legitimate claim of entitlement in continuing employment.

Finally, although his last argument is not entirely clear, Voss seems to also argue his due process rights were violated because the Housing Authority failed to follow its own policy regarding suspensions of employees by not properly substantiating the results of his drug test. In support of his argument, Voss relies on a provision of what he claims was the Housing Authority's Operating Policy Manual, which states:

> Suspension: An employee may be suspended from duty without pay for a period not to exceed fifteen (15) days for the following reasons:
>
> *Pending investigation of charges which, if substantiated, would result in dismissal. However, if such investigation does not substantiate the charges preferred and the employee is retained, the employee shall be compensated for the period of suspension at his or her regular rate of pay.*

Even if this provision could create some legal entitlement for Voss, his argument fails because he cannot show this provision was violated. The undisputed facts reveal Voss was fully paid during this suspension and he was never terminated because of the results of the drug test. Thus, there is no factual basis to entertain Voss's legal theory.

Because Voss was an at-will employee and he has failed to articulate any other basis from which he could claim entitlement to continued employment under Arkansas law, his constitutional due process claim fails as a matter of law. The district court was correct to grant summary judgment to the Housing Authority and Wyse on this claim.[6]

## III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____

---

[6]We also conclude the district court did not abuse its discretion in denying Voss's Rule 59(e) motion, which largely repeated the same arguments advanced at the summary judgment stage. *See Schoffstall*, 223 F.3d at 827 (holding the district court did not abuse its discretion in denying a Rule 59(e) motion which merely restated arguments made in opposition to summary judgment).