# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-2244

_____

Michael Joseph Sellers

*Plaintiff - Appellant*

v.

Deere & Company, also known as John Deere Company; Clyde D'Cruz

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Northern District of Iowa, Waterloo

_____

Submitted: March 24, 2015
Filed: July 2, 2015

_____

Before RILEY, Chief Judge, COLLOTON and KELLY, Circuit Judges.

_____

RILEY, Chief Judge.

Michael Sellers, an employee at Deere & Company (Deere) for over thirty years, sued Deere and his supervisor, Clyde D'Cruz (collectively, defendants), alleging (1) age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., and the Iowa Civil Rights Act (ICRA), Iowa Code § 216; (2) disability discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq.; (3) retaliation under the ADEA, ICRA, and ADA; and

(4) harassment because of his age and disability.[1]  The district court[2] granted summary judgment in favor of the defendants.  Sellers appeals, and we affirm.

## I.    BACKGROUND
### A.    Factual Background[3]

Sellers, who was in his mid to late forties when the events of this case transpired, began working for Deere in 1979 and worked in several positions throughout his tenure.  In 2001, D'Cruz, who recently had become Sellers's manager, changed Sellers's position from Supply Management Specialist to Process Pro for the supply management department.  This was a lateral job change that did not alter Sellers's pay or benefits, and Sellers remained classified as a "Grade 7" employee.  Process Pro was a "dynamic," "fluid" position "in which job assignments and projects c[ould] change" and "responsibilities could be added" at any time.

Although Sellers and D'Cruz got along well initially, and D'Cruz considered Sellers his "right-hand man," the relationship soon began to deteriorate.  Sellers observed D'Cruz had a poor attitude towards older employees and overheard D'Cruz make negative statements about older employees, comparing them to "sheep that can be slaughtered" and repeatedly saying, "We need to get all these old farts [or 'old

---

[1]Sellers also raised claims of state-law defamation and failure to provide equal pay as required by Iowa Code § 216.6A.  Sellers does not appeal the dismissal of these claims.

[2]The Honorable Jon Stuart Scoles, Chief United States Magistrate Judge for the Northern District of Iowa, sitting with the consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

[3]We have appellate jurisdiction pursuant to 28 U.S.C. § 1291, and because this is an appeal of the district court's grant of summary judgment, "we recite the[] facts in the light most favorable to [Sellers] as the non-moving party."  Davis v. Hall, 375 F.3d 703, 706 n.1 (8th Cir. 2004).

dogs'] out of here." Upon hearing these statements, Sellers spoke with D'Cruz, telling him these comments "sound[ed] an awful lot like age discrimination" and recommending D'Cruz "temper [his] words." Sellers contends D'Cruz then acted on his words by promoting younger employees, which created a "gap in knowledge" in the supply management department.

On two occasions in 2003, D'Cruz became frustrated with Sellers and yelled at and berated Sellers in front of other employees. D'Cruz had problems with Sellers's work, noting Sellers struggled when interacting with others and had "analysis paralysis."

In August 2003, Daria Jerauld became Manager of Supply Management Business Processes. Jerauld directly supervised Sellers and reported to D'Cruz. After Jerauld was hired, Sellers's duties began to increase: he took over the work of other employees, was assigned to supervise three people, and had a number of "tasks thrown at him . . . out of the blue." Sellers told Jerauld he was unsure of taking on the new responsibilities because he had been struggling with depression, but Jerauld told him, "You are the only one who can do this" and warned Sellers not to tell D'Cruz about his depression. In January 2004, Sellers told Jerauld his workload had become unmanageable. "Her response was to simplify the job." Jerauld and D'Cruz continued experiencing problems with Sellers, and in Sellers's 2004 performance evaluation, Jerauld was critical of Sellers and rated him "does not meet expectations."

Sellers complains that in late 2004 and early 2005, Jerauld forbade him from using conference rooms and D'Cruz refused Sellers's request that any newly assigned duties be put in writing. Sellers made these requests because he was struggling with mental health issues that affected his concentration and short-term memory. Sellers initially began treatment for depression and anxiety in 2000, but his symptoms worsened throughout 2004 and 2005, and in 2005, Sellers was diagnosed with Post-

Traumatic Stress Disorder arising in part from the stress Sellers experienced at work. On March 1, 2005, Sellers took medical leave and has not returned to work since.

### B.    Procedural Background

On April 26, 2005, Sellers filed a discrimination charge with the United States Equal Employment Opportunity Commission (EEOC) alleging discrimination based on retaliation, age, and disability.  The EEOC cross-filed the complaint with the Iowa Civil Rights Commission (ICRC).  After investigating, the EEOC could not determine if Deere had violated any laws and issued Sellers a right-to-sue letter on April 17, 2012.  The ICRC also issued a right-to-sue letter, at Sellers's request, on July 26, 2012.

Sellers then brought the instant suit claiming age discrimination, failure to accommodate his disability, disparate treatment because of his disability, retaliation, and a hostile work environment.  Defendants moved for summary judgment on all claims.  The district court found Sellers could not establish a prima facie case of discrimination because he had not suffered an adverse employment action and could not prove other elements of his claims and further found Sellers had not alleged sufficient facts to support a hostile work environment claim.  The district court granted defendants summary judgment, and Sellers appeals.

## II.    DISCUSSION

"We review de novo the district court's grant of summary judgment to [defendants], viewing the facts in the light most favorable to [Sellers] and giving h[im] the benefit of all reasonable inferences."  Tramp v. Associated Underwriters, Inc., 768 F.3d 793, 798 (8th Cir. 2014).  Apparently overlooking our en banc decision in Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011), Sellers contends, "'Summary judgment is disfavored in employment discrimination cases.'" (Quoting Simpson v. Des Moines Water Works, 425 F.3d 538, 542 (8th Cir. 2005), abrogated by Torgerson, 643 F.3d at 1058 app.).   We again reiterate "[t]here is no

'discrimination case exception' to the application of summary judgment." Torgerson, 643 F.3d at 1043 (quoting Fercello v. Cnty. of Ramsey, 612 F.3d 1069, 1077 (8th Cir. 2010)). We evaluate Sellers's claim using the usual summary judgment standard and only "will affirm summary judgment if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Clarinet, LLC v. Essex Ins. Co., 712 F.3d 1246, 1249 (8th Cir. 2013) (quoting Fed. R. Civ. P. 56(a)).

## A.    Adverse Employment Action

To prevail on his age discrimination, disability discrimination, and retaliation claims, Sellers must prove he suffered an adverse employment action. See King v. United States, 553 F.3d 1156, 1160 & n.3 (8th Cir. 2009) (ADEA and ICRA age discrimination); Stewart v. Indep. Sch. Dist. No. 196, 481 F.3d 1034, 1042-43 (8th Cir. 2007) (ADEA and ADA retaliation); Fenney v. Dakota, Minn. & E. R.R. Co., 327 F.3d 707, 711-12 (8th Cir. 2003) (ADA disparate treatment and failure to accommodate). "'An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage.'" Thomas v. Corwin, 483 F.3d 516, 528 (8th Cir. 2007) (quoting Wedow v. City of Kan. City, Mo., 442 F.3d 661, 671 (8th Cir. 2006)). "To be 'adverse' the action need not always involve termination or even a decrease in benefits or pay. However, not everything that makes an employee unhappy is an actionable adverse action." Fenney, 327 F.3d at 717 (quotations omitted).

Sellers claims to have suffered two adverse employment actions: (1) effective demotion under Deere's Global Jobs Evaluation (GJE), and (2) an unmanageable increase in his duties.[4]

---

[4]Sellers's appellate brief, in passing, also suggests he suffered an adverse employment action when he "was stripped of his supervisory duties." Sellers waived this issue because he did not raise it below. "We consider newly raised issues only if they are purely legal and no additional factual development is necessary, or where

### 1. Global Jobs Evaluation

In 2004, Deere implemented a company-wide personnel reorganization, the GJE. The GJE consolidated Deere's employment positions by "mapping" each position into "benchmark jobs" with specific job descriptions and pay grades. See also Rebouche v. Deere & Co., ___ F.3d ___, ___, No. 14-2815, 2015 WL 3372251, at *1 (8th Cir. May 26, 2015) (describing the GJE). Sellers claims he was "effectively demote[d]" under the GJE because, although he had been employed as a Process Pro for two years, he was mapped as a Supply Management Specialist III. Sellers alleges as a Process Pro he had "multiple promotional opportunities," but Supply Management Specialist III was a "dead end job" from which he could only be promoted one additional level.

This court must first determine whether Sellers has properly preserved this allegation. Defendants contend Sellers cannot now claim the GJE was an adverse employment action because Sellers did not mention the GJE in his complaint to the EEOC.

The federal and state anti-discrimination statutes governing this case require plaintiffs to file complaints with the EEOC or the ICRC before commencing a suit in federal court. See 42 U.S.C. §§ 12117(a), 2000e-5(e)(1); 29 U.S.C. § 626(d)(1); Iowa Code § 216.15(13). "'Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice'" that must be individually addressed before the EEOC. Richter v. Advance Auto Parts, Inc., 686 F.3d 847, 851 (8th Cir. 2012) (per curiam) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002)). "Although we have often stated that we will liberally construe an administrative charge for exhaustion of

---

manifest injustice would otherwise result. Neither exception applies here." Orion Fin. Corp. of S.D. v. Am. Foods Grp., Inc., 281 F.3d 733, 740 (8th Cir. 2002) (internal citation omitted).

remedies purposes, we also recognize that 'there is a difference between liberally reading a claim which lacks specificity, and inventing, *ex nihilo*, a claim which simply was not made.'" Parisi v. Boeing Co., 400 F.3d 583, 585-86 (8th Cir. 2005) (quoting Shannon v. Ford Motor Co., 72 F.3d 678, 685 (8th Cir. 1996)) (dismissing ADEA refusal to rehire claims not listed in the plaintiff's EEOC complaint "[b]ecause [each] refusal to . . . rehire is a discrete employment action [that the plaintiff] could have identified, either in his original administrative charge or by amendment").

As in Parisi, each of Sellers's alleged adverse employment actions are discrete acts that should have been separately presented to the EEOC. See id. Sellers's charge of discrimination describes in detail his increased workload and perceived mistreatment by Deere employees, but it does not mention the GJE or make any claim that Sellers was demoted. Sellers is therefore prohibited from alleging the GJE effectively demoted him. See id.; see also Cottrill v. MFA, Inc., 443 F.3d 629, 634-35 (8th Cir. 2006).

Even if properly presented before the EEOC, Sellers's contention that the implementation of the GJE was an adverse employment action is meritless. Assuming Sellers's position changed after the GJE, the change in title had no corresponding change in Sellers's employment or working conditions. See Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 919 (8th Cir. 2000) ("A transfer constitutes an adverse employment action when the transfer results in a significant change in working conditions or a diminution in the transferred employee's title, salary, or benefits."). Although Sellers contends he had fewer opportunities for advancement after the GJE, Sellers provides no record support for such an assertion. "Simply providing a massive record does not satisfy [Sellers's] burden, and we will not sort through a voluminous record in an effort to find support for [Sellers's] allegations." Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 800 (8th Cir. 2004).

## 2. Increased Workload

Sellers contends the increase in his job duties in 2004 was an adverse employment action. Increased workload that materially changes an employee's duties can constitute an adverse employment action. See, e.g., Ledbetter v. Alltel Corp. Servs., Inc., 437 F.3d 717, 724 (8th Cir. 2006) (affirming the district court's finding, as not clearly erroneous, that an adverse employment action arose where the plaintiff "assumed [the] additional responsibilities [of a manager] without receiving a raise" or change in title). Here, it is not clear any of the complained-of duties altered Sellers's preexisting responsibilities.

Sellers specifically claims his "position became untenable" because he (1) began supervising three employees; (2) took over the job responsibilities of an employee while she was on sick leave; (3) had to spend a great deal of time on other delegated projects; and (4) "got tasks thrown at him in the last minute." Sellers also complains that his part-time employee assistant was reassigned.

Viewing these allegations in the light most favorable to Sellers, the additional job duties do not constitute "'a material change in the terms or conditions of employment,'" Fenney, 327 F.3d at 716 (quoting Brown v. Lester E. Cox Med. Ctrs., 286 F.3d 1040, 1045 (8th Cir. 2002)). Sellers admitted the Process Pro job was a "dynamic," "fluid" position "in which job assignments and projects c[ould] change" and "responsibilities could be added to [the] position" at any time. By Sellers's own testimony, the changing duties were to be expected—Sellers explained the position "evolved week to week based on what priorities [D'Cruz] had." Although the Process Pro position was fast paced and potentially stressful, as the district court noted, "that was the job Sellers signed up for." The district court was correct: "[Sellers] cannot now claim that being assigned varied responsibilities constituted an adverse employment action." See Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs., 728 F.3d 800, 804 (8th Cir. 2013) ("[M]inor changes in duties or working conditions, even

unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action.").[5]

The lack of an adverse action is fatal to Sellers's age discrimination, disability discrimination, and retaliation claims.

## B. Hostile Work Environment

As part of his age discrimination, disability discrimination, and retaliation claims, Sellers also alleged he was subjected to a hostile work environment.[6] "To prevail on [his] hostile work environment claim," Sellers must present evidence "'that he is a member of the class of people protected by the statute, that he was subject to unwelcome harassment, that the harassment resulted from his membership in the protected class, and that the harassment was severe enough to affect the terms, conditions, or privileges of his employment.'" Ryan v. Capital Contractors, Inc., 679 F.3d 772, 778 (8th Cir. 2012) (quoting Shaver v. Indep. Stave Co., 350 F.3d 716, 720 (8th Cir. 2003)) (ADA hostile work environment); see also Rickard v. Swedish Match N. Am., Inc., 773 F.3d 181, 184 (8th Cir. 2014) (ADEA hostile work environment). Assuming Sellers can meet the first three prongs, the conduct about which Sellers

---

[5]Sellers additionally contends this unmanageable workload caused him to receive artificially low performance evaluations, which led to a reduction in his wages, loss of bonuses, and harmed his future job prospects. A "negative evaluation does not by itself constitute an adverse employment action." Cossette v. Minn. Power & Light, 188 F.3d 964, 972 (8th Cir. 1999). Although the loss of pay, bonuses, and future prospects could amount to "tangible change[s] in duties or working conditions," id. (quotation omitted), Sellers provided no evidence supporting his assertion these changes occurred. See Howard, 363 F.3d at 800.

[6]Because the elements of a hostile work environment claim under ICRA "mirror" the elements under federal law, Boyle v. Alum-Line, Inc., 710 N.W.2d 741, 749-50 (Iowa 2006); cf. McElroy v. State, 703 N.W.2d 385, 391 (Iowa 2005), we address the federal and state claims together.

complains is not severe enough to support his hostile work environment claim. To determine whether the harassment affected a "term[], condition[], or privilege[] of [Sellers's] employment," "'we [must] consider the totality of the circumstances, including the frequency and severity of the conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with [Sellers's] job performance.'" Ryan, 679 F.3d at 778-79 (quoting Cross v. Prairie Meadows Racetrack & Casino, Inc., 615 F.3d 977, 981 (8th Cir. 2010)).

Sellers identifies two incidents of offensive conduct in which D'Cruz yelled at Sellers, berated him, and engaged in extreme behavior such as spitting, pushing furniture, and pounding his fists. Even if severe, these incidents were isolated; during the four years Sellers worked under D'Cruz, Sellers experienced only two such incidents. See EEOC v. CRST Van Expedited, Inc., 679 F.3d 657, 687 (8th Cir. 2012) ("'[M]ore than a few isolated incidents are required' to support a hostile work-environment claim." (quoting Clearwater v. Indep. Sch. Dist. No. 166, 231 F.3d 1122, 1128 (8th Cir. 2000)).

Sellers points to other incidents in support of this claim: Sellers was given too much work, not allowed to use conference rooms, refused when he requested duties be put in writing, wrongfully blamed for a failed audit, and generally mistreated by D'Cruz. These incidents may have been "rude or unpleasant," but they were not "severe enough to affect the terms, conditions, or privileges of his employment." Ryan, 679 F.3d at 778-79 (quotation omitted).

## III.  CONCLUSION
We affirm the well-reasoned decision of the district court.

_____