# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1764

_____

Melissa Malloy,

*Plaintiff - Appellant*,

v.

United States Postal Service,

*Defendant - Appellee*.

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: November 20, 2013
Filed: June 30, 2014

_____

Before WOLLMAN, COLLOTON, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Melissa Malloy sued her employer, the United States Postal Service, alleging
that the Postal Service violated her rights under the Family and Medical Leave Act,

29 U.S.C. § 2601 *et seq.* The district court[1] granted summary judgment in favor of the Postal Service, and we affirm.

I.

Because we are reviewing a grant of summary judgment, we describe the facts in the light most favorable to Malloy. Malloy worked for the Postal Service from late November 2005 through December 29, 2010, under a series of appointments in a status known as a "casual" employee. The Postal Service hires casual employees to supplement its traditional workforce. Casual employees receive no benefits beyond their hourly wages and have neither collective bargaining nor grievance rights. Postal Service policy provides that casual employees can be terminated for absenteeism—including a single unexcused absence—without prior notice. The agency had no other policies concerning a casual employee's attendance.

Malloy had chronic attendance problems throughout her tenure at the Postal Service. Robert Burke, the Postal Service's manager of distribution operations in the area and Malloy's supervisor at the time, discussed Malloy's poor attendance with her in April, July, and September 2008, and in February and April 2009. In August 2009, Jeffrey McConkey, then the supervisor of distribution operations and Malloy's supervisor, informed Malloy that if her attendance did not improve, she could be terminated immediately. He explained that the Postal Service did not have a progressive discipline policy for casual employees.

During 2010, Kenny Ramus and James Harpold were Malloy's immediate supervisors. Both Ramus and Harpold reported to Burke. Although Ramus was

___

[1] The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

authorized to direct and to schedule hours for casual employees, he was not responsible for disciplining or terminating them.

On April 27, 2010, Malloy submitted a written request for leave under the FMLA based on a medical condition that involved lower-back pain. The Postal Service approved Malloy's request (effective April 21), authorized her to take leave for one day per one incident each month, and even allowed her to take an extra day of FMLA leave on four occasions during 2010. Malloy requested and took FMLA leave on April 22, May 6 and 10, June 10 and 11, August 15 and 16, November 4, and December 17 and 18, 2010.

In addition to her FMLA leave, however, Malloy was absent without excuse on February 1 and 22, and December 12 and 27, 2010. After Malloy's unexcused absence on December 27, Harpold and Burke decided to terminate her employment. Harpold notified Malloy of the decision on December 29, telling her that she was discharged as a result of four unexcused absences within an eleven-month period, two of which occurred in a fifteen-day span. Harpold testified that in evaluating attendance-related discipline, he considers the employee's job performance, whether the employee communicated with him regarding the absences, and the timing of the absences. Absences around the holidays—including the month of December—are more problematic, because that is the Postal Service's busiest time of year. According to Harpold, he does not consider FMLA-related absences in making disciplinary decisions. Harpold did not discuss Malloy's termination with supervisor Ramus prior to terminating her, but he did meet with Ramus shortly thereafter to ensure that he had not made a mistake in terminating Malloy.

There was some dispute among Malloy's supervisors regarding her job performance. None of the termination-related documents mentions any concern with Malloy's job performance. Ramus testified that Malloy was a good worker and that he had no concerns about her job performance. Distribution manager Burke, on the

-3-

other hand, testified that he did not compare Malloy's attendance record to the attendance records of other casual employees, because Malloy's supervisors "had constant complaints about her work performance," and those complaints "definitely played a part" in the decision to terminate her.

In early 2011, Malloy brought a discrimination claim under the FMLA against the Postal Service, claiming that the agency fired her because she invoked her rights under the statute. On the employer's motion for summary judgment, the district court analyzed Malloy's claim under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 999 (8th Cir. 2011). Relying on the temporal proximity between Malloy's exercise of her FMLA rights (December 17 and 18) and her termination (December 29), the court ruled that Malloy established a *prima facie* case of discrimination. The Postal Service proffered a legitimate, nondiscriminatory reason for Malloy's termination: her four unexcused absences in an eleven-month period, two of which occurred within fifteen days of each other during a holiday period. The district court granted summary judgment for the Postal Service, reasoning that Malloy failed to demonstrate that similarly situated employees were treated differently, and that Malloy's other arguments were unpersuasive.

Malloy appeals. We review the district court's grant of summary judgment *de novo*, viewing the evidence and drawing all reasonable inferences in the light most favorable to Malloy. *Hervey v. Cnty. of Koochiching*, 527 F.3d 711, 719 (8th Cir. 2008).

II.

The FMLA prohibits an employer from taking adverse action against an employee because that employee exercises the rights to which she is entitled under the FMLA. *See Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1005–06

(8th Cir. 2012). Taking FMLA leave, however, does not give an employee any greater protection against termination for reasons unrelated to the FMLA than was available before. *Estrada v. Cypress Semiconductor (Minn.) Inc.*, 616 F.3d 866, 871 (8th Cir. 2010). To avoid summary judgment, Malloy must present sufficient evidence for a jury to find that the Postal Service's decision to terminate her was motivated by her exercise of rights under the FMLA. *See Pulczinski*, 691 F.3d at 1007.

Malloy argues that she demonstrated a submissible case with evidence of (1) the temporal proximity of the exercise of her FMLA rights to her termination, (2) the Postal Service's more lenient treatment of other casual employees who did not exercise their FMLA rights, and (3) the Postal Service's mendacity about the reasons for her termination. Because the record has been fully developed in conjunction with the motion for summary judgment, we turn directly to the ultimate question whether there is a submissible case of discrimination *vel non*. *Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 810 (8th Cir. 2005); *see U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714–15 (1983).

Generally, more than a temporal proximity between protected activity and termination is required to present a genuine issue of fact for trial. *Sisk v. Picture People, Inc.*, 669 F.3d 896, 900 (8th Cir. 2012). Malloy relies on the eleven-day period between her use of FMLA leave and her termination, but this evidence of timing cannot be viewed in isolation. The Postal Service repeatedly warned Malloy about her attendance problems before she requested FMLA leave. "[E]vidence that the employer had been concerned about a problem before the employee engaged in the protected activity undercuts the significance of the temporal proximity." *Wierman*, 638 F.3d at 1001. Otherwise, a problem employee on thin ice with the employer could effectively insulate herself from discipline by engaging in protected activity. Malloy also used FMLA leave on several other occasions between April and November without repercussions, suggesting that the employer was not hostile to the

protected activity. *See Chappell v. Bilco Co.*, 675 F.3d 1110, 1118 (8th Cir. 2012). Malloy's termination followed immediately on the heels of a second unexcused absence. Any inference of discrimination arising from temporal proximity to the December 17 and 18 FMLA leave is undermined by the inference of nondiscrimination arising from temporal proximity to the December 27 unexcused absence.

Malloy sought to enhance her claim with evidence that casual employees who were absent without excuse, but who did not exercise FMLA rights, were treated more leniently by the employer. She failed to show, however, that her suggested comparators reported to the same supervisors or were absent without excuse during the busy holiday season. *See Cherry v. Ritenour Sch. Dist.*, 361 F.3d 474, 479 (8th Cir. 2004). The putative comparators were thus not similar to Malloy "in all relevant respects," *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 835 (8th Cir. 2002), and the evidence adds no heft to her case.

Malloy complains that the district court unfairly discounted her evidence because the Postal Service never cited in argument the fact that the comparators reported to different supervisors. She cites Federal Rule of Civil Procedure 56(f)(2), which provides that a district court may grant summary judgment on grounds not raised by a party, but only after giving notice and a reasonable time to respond. Rule 56(f) did not preclude the district court's analysis here, because Malloy has the burden to prove that her comparators are similarly situated to her, *Smith*, 302 F.3d at 835, and the district court was duty-bound to examine whether that burden was satisfied. *See Liberty Mut. Ins. Co. v. Pella Corp.*, 650 F.3d 1161, 1178 (8th Cir. 2011). Although the Postal Service emphasized other reasons why the comparators were dissimilar, the issue of similarity was fairly presented, and the district court properly applied the relevant law to the undisputed facts.

Malloy also contends that evidence of the Postal Service's mendacity regarding its reason for her termination supports an inference of discriminatory motive. Malloy asserts that Harpold's testimony was internally inconsistent, because he stated both that a good worker deserves leniency, and that he did not discuss Malloy's job performance with supervisor Ramus before her discharged Malloy. Harpold also testified, however, that he was familiar with Malloy's performance from the period when he was her supervisor, and that he checked with Ramus shortly after the termination—when there was still time to reverse it—to ensure that he had not made a mistake. There is no inconsistency that supports an inference of discriminatory motive.

Malloy also suggests that the Postal Service gave shifting explanations for the termination, and that the agency "suddenly" enforced its workplace policies on attendance for the first time after she exercised rights under the FMLA. Neither contention carries much weight.

When Malloy was terminated, Harpold cited the fact that she had been absent four times in the last eleven months and twice in the previous fifteen days. Later, Burke added that Malloy's supervisors complained about her work performance. Burke's addendum is not the sort of shifting explanation that supports an inference of discrimination. The agency maintained all along that Malloy was terminated for poor attendance. That Burke supplemented the consistent explanation with comments about her performance—perhaps to explain why leniency was unwarranted in this instance—does not undermine the employer's legitimate reason for the action. *See Phillips v. Mathews*, 547 F.3d 905, 913 n.5 (8th Cir. 2008). Similarly, the employer's reliance on Malloy missing work during the Postal Service's busiest season was an amplification of the core justification of poor attendance. There has been no substantial change in the employer's stated reason.

Malloy's claim that the Postal Service suddenly enforced its workplace policies after she used FMLA leave is unsupported by the record. Malloy used FMLA leave frequently during 2010 with no negative consequences. That Malloy's attendance problems finally triggered action by the employer does not mean the Postal Service deviated from ordinary practice. The December 2010 absences were not similar in kind to the previous absences. They occurred in close succession during the holiday season. And the later absences came after Malloy already had compiled a record of poor attendance and received warnings that she could be discharged for additional infractions.

In the end, Malloy's case consists of an unpersuasive argument of temporal proximity combined with a collection of challenges to agency practice and explanations that do not support an inference of impermissible motive. There is not a submissible case of discrimination.

*        *        *

The judgment of the district court is affirmed.

_____