# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-2483
_____

Tori Evans

*Plaintiff - Appellant*

v.

Cooperative Response Center, Inc.

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 22, 2020
Filed: May 4, 2021
_____

Before SMITH, Chief Judge, LOKEN and GRUENDER, Circuit Judges.
_____

LOKEN, Circuit Judge.

Cooperative Response Center (CRC) services electric utilities and monitors security and medical alarms throughout the country. CRC hired Tori Evans in 2004. She became the sole office assistant at CRC's Austin, Minnesota office in 2012. CRC terminated Evans in March 2017 for violating its "no-fault" attendance policy. In February 2018, Evans commenced this action, alleging her termination violated her rights under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*,

and the Family Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 *et seq.*, because she suffers from reactive arthritis, a chronic autoimmune disease. After discovery, the district court[1] granted CRC summary judgment, dismissing all claims. Evans appeals, arguing there are triable issues of fact as to whether CRC violated the ADA by discriminating and retaliating against her because she is disabled and by failing to accommodate her disability, and violated the FMLA by denying leave to which she was entitled and by discriminating against her for exercising FMLA rights. Reviewing the award of summary judgment *de novo* and the facts in the light most favorable to Evans, we affirm. See Dalton v. ManorCare of West Des Moines IA, LLC, 782 F.3d 955, 957 (8th Cir. 2015) (standard of review).

## I. ADA Claims.

CRC's employee conduct policy stresses the importance of regular attendance, deeming it an "essential job function for all CRC employees." Repeated absences, failing to notify a supervisor of an absence, and unauthorized absences without approved leave are grounds for termination. CRC's attendance policy provides that unexcused absences that are not FMLA-eligible or otherwise part of an approved leave of absence generate "points" that progressively lead to verbal warnings, then written warnings, then termination if an employee receives ten points in a rolling twelve month period.

In December 2015, Evans began suffering from diarrhea, mouth sores, and severe anemia. She consulted her physician, Dr. Gregory Angstman. After these symptoms caused Evans's hospitalization in April 2016, Dr. Angstman certified to CRC she was suffering from a serious health condition. In June, Dr. Angstman diagnosed Evans with reactive arthritis, an autoimmune disease whose symptoms

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

include gastrointestinal illness, oral lesions, and joint pains. Dr. Angstman advised CRC that Evans would likely need a half day off once or twice per month to attend medical appointments and a full day off once or twice per month to deal with recurring arthritic flare-ups. A CRC human resources employee (Jennifer Groebner) informed Evans the company had approved up to two full days and two half days of intermittent FMLA leave per month but noted that "absences above and beyond the FMLA approved frequency" would be eligible for points.

In the succeeding months, Evans took intermittent FMLA leave on numerous occasions, but there were eleven days she received a point after being denied FMLA leave, point-bearing absences that led to her termination in March 2017. In a December annual performance review, Evans's supervisor Kerry Wylie noted that Evans needed to improve her attendance, a "key" part of her role, because her frequent absences burdened co-workers and caused a delay in functions that could not await her return. When Evans was absent, Wylie and accounting department staff performed duties that could be covered in her absence. Wylie testified that she could generally manage covering for Evans but the absences burdened co-workers.

After the performance review, Evans did not incur another unexcused absence until March 2017, taking approved FMLA leave on four occasions. On March 22, Evans texted Wylie that she would be absent the next two days because she had no voice and was developing a slight fever. CRC assessed a point because lost voice was not among her listed FMLA symptoms.[2] Evans returned to work on March 24 but left after emailing Wylie that her fever had returned. She informed Wylie's supervisor, Brad Fjelsta, and human resources staff that she was leaving but did not say she was seeking FMLA leave or suffering from a reactive arthritis flare-up. CRC assessed a half point for this absence, putting Evans at ten within the twelve-month

---

[2]CRC drafted a final written warning that went undelivered because Wylie was out of the office until March 27.

-3-

period. On Monday, March 27, Wylie and Groebner advised Evans CRC was terminating her employment for excessive absences in violation of the company's attendance, employee conduct, and work rules policies.

A. ADA Discrimination. Evans first asserts that her termination violated the ADA's prohibition against discharging an employee on account of her disability. See 42 U.S.C. § 12112(a). To prove a claim of disability discrimination, an employee may rely on either direct or indirect evidence. Lipp v. Cargill Meat Sols. Corp., 911 F.3d 537, 543 (8th Cir. 2018). Evans stakes her ADA claims on the latter, arguing she presented sufficient evidence of discrimination under the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) -- a plaintiff establishes a prima facie case by demonstrating: "(1) that [she] was disabled within the meaning of the ADA; (2) that [she] was qualified to perform the essential functions of the job with or without a reasonable accommodation; and (3) a causal connection between an adverse employment action and the disability." Lipp, 911 F.3d at 544 (cleaned up). If she makes that showing, "the burden of production then shifts to the employer to show a legitimate, nondiscriminatory reason for the adverse action. The burden then returns to the plaintiff to show that the employer's proffered reason was a pretext for discrimination." Id. (quotation omitted).

Many of Evans's duties as the sole office assistant required her physical presence at the office. These responsibilities included answering phones, welcoming visitors, coordinating travel itineraries, and helping the accounting department with check deposits and monthly billing. The district court concluded that Evans was "unable to perform the essential functions of her position" -- the second element of the prima facie case -- "[b]ecause [she] could not come to work on a regular and reliable basis." Alternatively, the district court held that Evans could not show that "CRC's legitimate, nondiscriminatory reasons for firing her" were pretextual. We need only consider the first ground to affirm. See Alexander v. Northland Inn, 321 F.3d 723, 726 (8th Cir. 2003).

We have "consistently stated that regular and reliable attendance is a necessary element of most jobs." Lipp, 911 F.3d at 544 (quotation omitted). "[A]n employee who is unable to come to work on a regular basis is unable to satisfy any of the functions of the job in question, much less the essential ones." Spangler v. Fed. Home Loan Bank of Des Moines, 278 F.3d 847, 850 (8th Cir. 2002) (cleaned up). We must consider an employer's judgment that regular and reliable attendance is an essential function of an employee's job, looking to relevant evidence such as written job descriptions and policies regarding attendance and workplace conduct. See Lipp, 911 F.3d at 544, quoting 42 U.S.C. § 12111(8) and 29 C.F.R. § 1630.2(n)(3).

In Lipp, we affirmed the grant of summary judgment dismissing the plaintiff's ADA disability claims because of strong evidence she could not perform her job due to persistent absences. See id. at 545. Here, CRC's "no-fault" attendance policy stated that: "Regular attendance/punctuality for scheduled work hours is an *essential job function* for all CRC employees." (Emphasis added). CRC's job description for the office assistant position, filled only by Evans at the Austin location, listed tasks such as answering phones and greeting visitors that she could only perform when physically at the office. See id. Dating back to 2014, CRC warned Evans several times that her unexcused absences were "unacceptable," impaired CRC's service to its customers, and, as supervisor Wylie testified, placed an "additional burden . . . on fellow employees." See Higgins v. Union Pac. R.R., 931 F.3d 664, 670 (8th Cir. 2019). Evans admitted that her absences burdened co-workers by detracting from the time they could spend on their own duties. Her attendance was an essential function of the office assistant job. CRC was not obligated to "reassign existing workers to assist [Evans] in [her] essential duties." Dropinski v. Douglas Cnty., 298 F.3d 704, 710 (8th Cir. 2002); accord Alexander, 321 F.3d at 728.

Evans contends that CRC did not follow its policies because it failed to give a final written warning in March 2017 and inconsistently assessed unexcused absence points. The failure to provide a final written warning was excusable, given supervisor

-5-

Wylie's absence from the office. Moreover, Evans received numerous attendance warnings in the prior months and instructions to improve her attendance in her December performance review. After CRC assessed one point on October 17, 2016, putting Evans at nine points, it issued a final written warning on November 1 explaining that excessive absences impacted the service CRC provided its customers, placed an unacceptable burden on co-workers, and further unexcused absences could result in termination. CRC assessed another half point on November 9 when Evans sought to use a full day of FMLA leave after taking two full days within the previous thirty days. Now at 9.5 points, she received a final written warning.

Evans does not argue that CRC miscalculated when it determined she was at ten points after her March 24 absence. Her termination was consistent with CRC's attendance policy and with the employee conduct policy warning that repeated absences are grounds for termination.

Evans further contends the district court erred by "removing" intermittent FMLA leave as a reasonable accommodation. We disagree. "[I]ntermittent FMLA leave does not excuse an employee from the essential functions of the job," such as the need for regular and reliable attendance. Hatchett v. Philander Smith Coll., 251 F.3d 670, 675 n.4 (8th Cir. 2001).

For these reasons, we conclude the district court did not err in dismissing Evans's ADA discrimination claim. Undisputed evidence established that she was "unable to perform the essential functions of her position."

B. Failure-to-Accommodate. The ADA requires an employer to reasonably accommodate an employee's disability unless doing so "would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A). Depending on an employee's assigned duties and the employer's need for in-person attendance, reasonable accommodations may include "part-time or modified work schedules." 42 U.S.C. § 12111(9)(B).

-6-

Evans argues that CRC denied her a reasonable accommodation for her "unforeseeable flare-ups" by not permitting her to take FMLA leave beyond two full and two half days per month. "To prevail on [her] failure-to-accommodate claim under the ADA, [Evans] must establish both a prima facie case of discrimination based on disability and a failure to accommodate it." Moses v. Dassault Falcon Jet-Wilmington Corp., 894 F.3d 911, 923 (8th Cir. 2018) (quotation omitted).

Because Evans cannot establish a prima facie case of discrimination, we agree with the district court that her failure-to-accommodate claim necessarily fails. If an accommodation would leave the employee unable to perform an essential job function -- here, regular attendance -- her accommodation claim fails. See, e.g., Faulkner v. Douglas Cnty., 906 F.3d 728, 734 (8th Cir. 2018). Evans cannot establish that more FMLA leave or a part-time schedule would have been a reasonable accommodation because her daily job duties required her regular and reliable physical presence at the office. See Hatchett, 251 F.3d at 675.

Evans contends the district court erred in awarding summary judgment to CRC because a reasonable jury could conclude that CRC failed to engage in an interactive process to accommodate a known disability, her need for more frequent FMLA leave. See Sharbono v. N. States Power Co., 902 F.3d 891, 894 (8th Cir. 2018). But it was Evans's responsibility to formally request an accommodation. See Kelleher v. Wal-Mart Stores, Inc., 817 F.3d 624, 632 n.6 (8th Cir. 2016) (citation omitted). Evans argues she requested the allowance of additional FMLA leave beyond the days Dr. Angstman certified, but no evidence supports this assertion.

Nothing in the record shows that Evans affirmatively told CRC she needed additional leave. Evans did not need to use the magic word "accommodation" to request additional FMLA leave. See Garrison v. Dolgencorp, LLC, 939 F.3d 937, 941 (8th Cir. 2019). But she was required to "alert [CRC] to the need for an accommodation" -- here, that two full and two half days of FMLA leave every thirty

days was insufficient. Kelleher, 817 F.3d at 632 n.6 (quotation omitted). "[Evans] cannot expect [CRC] to read her mind and know she secretly wanted [additional FMLA leave] and then sue [CRC] for not providing it." Mole v. Buckhorn Rubber Prods., Inc., 165 F.3d 1212, 1218 (8th Cir.), cert. denied, 528 U.S. 821 (1999) (cleaned up). Moreover, the multiple FMLA certification forms exchanged between CRC and Dr. Angstman demonstrate that CRC "engage[d] in a 'flexible' and 'informal[] interactive process" with her." Garrison, 939 F.3d at 941. CRC sought recertification from Dr. Angstman in September 2016, *after* Evan's attendance issues had arisen. Dr. Angstman responded, "Refer to prior FMLA form."

C. Retaliation. Evans asserts as an ADA retaliation claim that CRC improperly assessed her points after she requested FMLA leave in excess of her monthly certification. As stated, this is an FMLA retaliation claim, one of three distinct FMLA claims we have identified. See Pulczinski v. Trinity Structural Towers, Inc., 691 F.3d 996, 1006 (8th Cir. 2012). We reject Evans's implicit assertion that unlawful FMLA retaliation is necessarily unlawful ADA retaliation. "The rights Congress created under the FMLA are fundamentally different than those granted under the ADA." Spangler, 278 F.3d at 851. To prove unlawful ADA retaliation, Evans must establish: "(1) [she] engaged in statutorily protected activity; (2) [she] suffered an adverse employment action; and (3) a causal connection between the two." Moses, 894 F.3d at 924 (quotation omitted). An ADA retaliation claim "requires a but-for causal connection between the employee's assertion of her *ADA rights* and an adverse action by the employer." Id. (emphasis added) (quotation omitted).

Here, Evans failed to present sufficient evidence of the required but-for causal connection. She points only to the temporal proximity between her last approved FMLA request on March 14 and her termination on March 27 as evidence of a causal connection. However, Groebner testified that she explained to Evans on March 27 that CRC was terminating her for attendance issues, including unexcused absences

occurring after March 14, and provided Evans a discharge letter memorializing that rationale. Evans cannot survive summary judgment by relying solely on temporal proximity when CRC provided a "virtually contemporaneous" legitimate reason for terminating her. See Hill v. Walker, 737 F.3d 1209, 1219 (8th Cir. 2013) (citation omitted). Prior to March 2017, CRC accommodated Evans's reactive arthritis disability for nearly one year. The district court properly granted summary judgment dismissing the retaliation claim.

## II. FMLA Claims.

The FMLA entitles eligible employees to twelve weeks of unpaid leave during a twelve-month period for serious medical conditions, and makes it unlawful for employers to "interfere with, restrain, or deny" employees exercising or attempting to exercise their rights to FMLA leave. Dalton, 782 F.3d at 959-60, citing 29 U.S.C. §§ 2612(a)(1)(D), 2615(a)(1). Evans alleges that CRC interfered with her FMLA leave benefits by assessing unexcused absence points when she was entitled to take FMLA leave. See 29 C.F.R. § 825.220(b). We refer to this type of § 2615(a)(1) claim as an "entitlement" claim. Pulczinski, 691 F.3d at 1005; see Bosley v. Cargill Meat Sols. Corp., 705 F.3d 777, 780 (8th Cir. 2013). Evans also alleges that CRC discriminated and retaliated against her for seeking and taking FMLA benefits, for which she was wrongly discharged. We refer to this type of § 2615(a)(1) claim as a "discrimination" claim. See Pulczinski, 691 F.3d at 1007; 29 C.F.R. § 825.220(c).

A. Entitlement. To succeed on her FMLA entitlement claim, Evans must prove: (1) "she was eligible for FMLA leave"; (2) "that [CRC] was on notice of her need for FMLA leave"; and (3) "the company denied her benefits to which she was entitled to under the FMLA." Hasenwinkel v. Mosaic, 809 F.3d 427, 432 (8th Cir. 2015) (citations omitted). The district court granted summary judgment dismissing this claim, concluding that CRC did not deny Evans FMLA leave to which she was entitled because it was justified in assessing unexcused absence points when she

either (i) failed to give required FMLA notification, (ii) sought FMLA leave beyond what Dr. Angstman certified, or (iii) sought FMLA leave for medical conditions unrelated to her reactive arthritis. Evans's appeal of these issues requires a review of the disputed unexcused absence points.

1. Lack of Notice. The district court concluded that CRC properly denied FMLA leave on October 17, 2016, and March 22 and 24, 2017, because Evans failed to give CRC sufficient notice of her intention to take leave. FMLA regulations provide that an employee who fails to "comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances," may have her "FMLA-protected leave . . . denied." 29 C.F.R. § 825.303(c). After approving intermittent leave based upon Dr. Angstman's medical certification, CRC informed Evans that she must follow its call-in procedure to have an absence counted as FMLA leave. The two-step procedure required Evans to notify her supervisor that she would be absent from work and notify human resources that she was designating the absence as FMLA leave. CRC assessed the employee an unexcused absence point if she did not comply before being absent from work.

CRC denied leave and assessed Evans a point on October 17, 2016 because she did not call human resources. She was assessed points on March 22 and 24, 2017, putting her above the ten-point termination threshold, because she did not notify CRC she was seeking FMLA leave on those days.[3] She was also assessed a point on August 26 because she failed to call her supervisor and a half point on September 27 in part because she failed to call human resources. Evans argues that she gave CRC adequate notice of her request for FMLA leave on each occasion and that CRC's two-step call-in procedure requiring an employee to inform both her supervisor and human resources before taking leave is stricter than the FMLA permits. The latter

---

[3]Consistent with its policy, CRC did not assess Evans a point on March 23 because she received a point on March 22.

argument is without merit. Citing § 825.303(c), we recently upheld a two-step notice requirement, concluding that an employee who failed to request FMLA leave from her manager and a third-party leave administrator "lost any right that she had to FMLA leave." Garrison, 939 F.3d at 944. Evans was admittedly aware of this policy.

Regarding the points assessed on March 22 and 24, 2017, we agree with the district court that there is no record evidence Evans ever "mention[ed] that her illness was related to her FMLA leave or to her reactive arthritis." The only notice she provided CRC were text messages and an email to Wylie indicating she lost her voice, had a slight fever, and had bodyaches, which were not listed as symptoms of reactive arthritis in her FMLA certification forms. While Evans told co-workers on March 24 that she was leaving because she was tired, and anemia was a listed symptom, Evans admitted she did not request FMLA leave that day. The FMLA regulations provide that an employee seeking leave for a qualifying reason

> *must specifically reference either the qualifying reason for leave or the need for FMLA leave.* Calling in "sick" without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act.

29 C.F.R. § 825.303(b) (emphasis added). CRC was not required to guess whether Evans needed FMLA leave when she called in; she was required to affirmatively invoke the FMLA.

2. Leave Beyond What Dr. Angstman Certified. Evans argues that CRC unlawfully denied FMLA leave for six absences from August to December 2016 because they exceeded her monthly allotment of intermittent FMLA leave based on Dr. Angstman's medical certifications. The FMLA provides that an employer may "require that a request for leave . . . be supported by a certification issued by the health care provider of the eligible employee." 29 U.S.C. § 2613(a).

-11-

On July 20, Groebner notified Evans that CRC had approved up to two full days and two half days of intermittent FMLA leave per month, based on Dr. Angstman's certification. Groebner reiterated that Evans would need to contact her supervisor and human resources, as outlined in CRC's FMLA leave policy, when she needed to take FMLA leave. Groebner also noted that Evans's FMLA certification covered "autoimmune/reactive arthritis, GI illness, oral lesions, and joint pains," mirroring the symptoms that Dr. Angstman identified in his July 8 certification. On August 11, CRC approved an FMLA leave request because Evans was suffering from a stomach ailment. However, it partially denied Evans's request the following day because she had already used two full days of FMLA leave within the previous thirty days, as Dr. Angstman had certified. CRC allowed Evans to use one of her half days of FMLA leave on August 12 and assessed a half point for the remainder. On August 25, Evans requested a full day of FMLA leave. CRC allowed her to use the remaining half day and assessed her a half point because she had exhausted her monthly allotment.

Evans consistently requested FMLA leave beyond the days certified by Dr. Angstman yet never attempted to increase the amount of intermittent FMLA CRC had approved. Evans argues CRC was obligated to seek recertification from Dr. Angstman after it became apparent she needed more leave. The record belies this contention. After assessing Evans points on several days due to exhausting her monthly leave allowance, CRC faxed Dr. Angstman a new FMLA form on September 15, asking him to recertify the frequency and duration of Evans's condition so it could determine whether she needed additional leave. Dr. Angstman returned the form on October 5, directing CRC to "Refer to prior FMLA form" for the times Evans would need to be absent due to flare-ups. The prior form certified up to two full days and two half days off per month -- the amount of FMLA leave CRC approved. This recertification addressed leave Evans needed between September 9 and 16, but it presented Dr. Angstman the opportunity to adjust his estimate prospectively. He did not do so. Evans argues CRC should have sought another recertification when it

-12-

continued to deny leave requests after receiving Dr. Angstman's September estimate. We disagree. Although 29 C.F.R. § 825.308 permits employers to seek recertifications, the regulation uses the word "may," making clear that supplemental requests are discretionary, not required.

3. Leave for Conditions Unrelated to Reactive Arthritis. Evans missed work the entire week of July 11-15, 2016 due to her knee "giving out." During a July 11 appointment, Dr. Angstman observed lingering mouth sores and anemia but no other symptoms of reactive arthritis including joint pain. He noted no issue with her knee. The next day, Dr. Angstman faxed CRC a letter excusing Evans from work for July 12-16. Evans called each day seeking to use FMLA leave. CRC denied the requests, deeming her knee issue unrelated to the symptoms for which she was FMLA-certified. CRC assessed one point on July 11 and July 14, consistent with its policy of assessing a point for every three days of unexcused absence. "Where absences are not attributable to a serious health condition . . . FMLA is not implicated and does not protect an employee against disciplinary action based upon such absences." Dalton, 782 F.3d at 962 (citations and quotations omitted).

Evans argues a reasonable jury could find that she was entitled to FMLA leave that week because her knee "giving out" was related to her reactive arthritis. We agree with the district court she did not produce sufficient evidence supporting that claim. When Evans visited Dr. Angstman on July 11 complaining of lingering mouth sores, his notes reflect that Evans did not claim she was suffering from joint problems and did not mention any issue with her knee. Dr. Barnes, Evans's orthopedic specialist, examined her on July 28 and opined that her knee injury was not related to reactive arthritis. (CRC gave Evans the "benefit of the doubt" and allowed her to use FMLA leave on July 28 because her knee caused her to miss work again.)

-13-

Concluding that CRC did not unlawfully deny Evans FMLA leave for any of the point-bearing absences she challenges, we affirm the grant of summary judgment dismissing her entitlement claim.

B. Discrimination. Evans argues the district court erred in dismissing her FMLA discrimination claim because a reasonable jury could find that CRC's decision to terminate was motivated by her exercise of FMLA rights. See Pulczinski, 691 F.3d at 1007. Evans can prevail on this claim either with direct evidence of CRC's discriminatory animus or with indirect evidence using the McDonnell Douglas paradigm. See Brown v. City of Jacksonville, 711 F.3d 883, 891 (8th Cir. 2013).

Evans argues that CRC's assessment of points for absences covered by her FMLA leave is sufficient direct evidence of discrimination. Like the district court, we disagree. Direct evidence is evidence "sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004). Assessing unexcused absence points consistent with CRC's Attendance and FMLA Leave policies is not, without more, sufficient to support a finding that discriminatory animus motivated Evans's termination. Thus, avoiding summary judgment on this discrimination claim turns on whether Evans presented sufficient indirect evidence of a prima facie case of FMLA discrimination and that CRC's legitimate reason for firing her -- excessive unexcused absences -- was pretexual. To establish a prima facie case, Evans must show that she engaged in FMLA-protected activity, suffered a materially adverse action, and a causal connection between the protected activity and the adverse action. See Pulczinski, 691 F.3d at 1007.

The district court concluded that Evans failed to show a causal connection between her requests for FMLA leave and her termination because too much time -- eight months -- elapsed between Evans's first FMLA request and her termination. Evans argues she has sufficient evidence of temporal proximity because the relevant

time period is the thirteen days between her last successful use of FMLA leave on March 14 and her termination on March 27, 2017. But regardless of the time period used, Evans cannot establish a causal connection based on temporal proximity. It is undisputed that Evans successfully used FMLA leave on many occasions between the time her reactive arthritis was first diagnosed and her termination. See Malloy v. U.S. Postal Serv., 756 F.3d 1088, 1091 (8th Cir. 2014) (employee's prior use of FMLA leave "without repercussions" undercuts an inference of discrimination). Moreover, Evans's unexcused absence on March 24 put her over the ten-point threshold for her termination three days later. See id. And CRC had warned Evans about excessive absences going back to 2014, *before* her reactive arthritis flared up. See id. (evidence of employer concern about performance problems before the employee's protected activity "undercuts the significance of the temporal proximity").

Evans argues she established a prima facie case of discrimination because she was terminated for absences that qualified for FMLA leave. We disagree. First, as we have explained, CRC did not deny Evans FMLA leave to which she was entitled. Second, while terminating an employee for absences that were FMLA-eligible may establish an entitlement claim, it does not prove the discriminatory intent needed to establish a discrimination claim. See Brown, 711 F.3d at 891. An employer's decision to terminate an employee based on the mistaken belief that an absence was not FMLA-eligible, standing alone, does not establish a prima facie case of discrimination. Hansen v. Fincantieri Marine Group, LLC, 763 F.3d 832, 835 n.1 (7th Cir. 2014), on which Evans relies, is not controlling and is readily distinguishable.

Even assuming Evans established a prima facie case of discrimination, we agree with the district court she did not meet her burden to show that CRC's legitimate nondiscriminatory reasons for firing her -- accumulating ten points of unexcused absences -- was pretextual. CRC's employee work policy expressly prohibited "unexcused absences without approved leave."

-15-

Because we conclude that CRC did not unlawfully terminate Evans, we need not consider her lost wages claim. The judgment of the district court is affirmed.

_____