NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-855

ALEXANDER PUOPOLO

vs.

MASSACHUSETTS PORT AUTHORITY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Alexander Puopolo, appeals from the entry of summary judgment against him in the Superior Court.  He contests the judgment as to two of the four counts in his complaint, alleging that the defendant, Massachusetts Port Authority (Massport), discriminated against him on the basis of disability by failing to provide a reasonable accommodation (count two) and that Massport wrongfully terminated him in retaliation for requesting a reasonable accommodation (count four), both in violation of G. L. c. 151B.  For essentially the reasons set forth in the Superior Court judge's well-reasoned memorandum and order allowing summary judgment, we affirm.

Background.  We summarize the relevant parts of the summary judgment record in the light most favorable to the plaintiff. See Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 38 (2005).

The plaintiff began working at Massport in 2005 as a port officer in its maritime security department (department) and was promoted to the position of captain in 2008.  In October 2019 he applied for intermittent leave under the Federal Family and Medical Leave Act (FMLA) due to a medical condition.  Massport approved his request for one year, through October 2020.

Starting in December 2019, Massport launched an investigation prompted by a complaint made by one of the plaintiff's subordinate port officers.[1]  In January 2020, Massport suspended the plaintiff for three days "for conduct unbecoming of a supervisor and for demonstrating poor judgment in [his] role as a Captain."  The plaintiff was reassigned to work the 10 P.M. to 6 A.M. shift.

In late February 2020, the plaintiff requested an accommodation for "cross coverage" in the event a flareup of his condition required him to leave his post during the overnight shift.  On March 2, 2020, a human resources (HR) representative informed the plaintiff via e-mail that Massport was "able to reasonably accommodate [his] leaving right away."  HR told the

---

[1] The subordinate officer's complaint did not accuse the plaintiff of any wrongdoing.

2

plaintiff that in the event of a flareup he could leave, after notifying the sergeant and lieutenant working the shift with him that they "would be assuming control and command of the shift." He would also have to notify the department's chief and assistant chief "that you are leaving the shift for an episodic flare-up." The chief, assistant chief, or a captain "would then respond and assume command. This should allow you to leave without delay." The plaintiff thanked HR and did not express any further questions or concerns.

The plaintiff requested an adjustment to the parameters of his intermittent FMLA leave in July 2020 and applied to renew his leave in October 2020. Both requests were approved.

In October and November, the plaintiff was captured on video surveillance footage that showed him eating with the subordinate officer involved in the prior disciplinary action. Massport asserted that their conduct violated the COVID-19 masking and social distancing guidelines it had in place at the time, although the plaintiff asserts that he believed they maintained an appropriate distance and that the masking policy was regularly disregarded. The video footage also showed the plaintiff "flicking" or "flipping" the subordinate officer's hair. On December 11, 2020, Massport terminated the plaintiff's employment, stating in the termination letter that the plaintiff had shown a "lack of judgment and poor work performance" based

3

on evidence that he "made inappropriate physical contact with a subordinate employee, failed to follow departmental protocols regarding safety and health, and engaged in conduct unbecoming of a supervisor."

Discussion. 1. Standard of review. Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002). "We review a decision to grant summary judgment de novo." Adams v. Schneider Elec. USA, 492 Mass. 271, 280 (2023). In conducting this review, we "consider the facts in their light most favorable to the nonmoving party, drawing all reasonable inferences in [the nonmoving party's] favor." Sullivan, 444 Mass. at 38. Generally, summary judgment is "a disfavored remedy in the context of discrimination cases based on disparate treatment . . . because the ultimate issue of discriminatory intent is a factual question." Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 689 (2016), quoting Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 439 (1995). However, "summary judgment on an employment discrimination claim may at times be appropriate," Godfrey v. Globe Newspaper Co., 457 Mass. 113, 119 (2010), including where a plaintiff fails to bear his burden of establishing a prima facie case of discrimination. See id. at 119-127. Cf. Del Valle-Santana v. Servicios Legales

4

de P.R., Inc., 804 F.3d 127, 130 (1st Cir. 2015), cert. denied, 579 U.S. 933 (2016).

2. Failure to provide a reasonable accommodation. The plaintiff argues that the motion judge erred when she concluded as a matter of law that Massport had provided the plaintiff with a reasonable accommodation and therefore granted summary judgment on count two. To prove employment discrimination on the basis of disability in violation of G. L. c. 151B, § 4 (16), an employee must show that (1) the employee has a physical or mental condition that substantially limits one or more major life activities, (2) the employee could perform essential job functions if given a reasonable accommodation, (3) the employer failed to provide a reasonable accommodation after one was requested, and (4) the employee was harmed as a result. See Godfrey, 457 Mass. at 119-120; Alba v. Raytheon Co., 441 Mass. 836, 843 n.9 (2004); G. L. c. 151B, § 1.

As to the third element, the plaintiff claims that Massport failed to provide a reasonable accommodation because he was required not just to notify his superior officers before leaving his shift, but also to "confirm coverage" and remain on duty until his notification was acknowledged -- a tall order, considering the urgency of a flareup and the fact that the plaintiff worked nights, when off-duty officers would be unlikely to promptly answer a telephone call. To support his

5

understanding of the accommodation, the plaintiff points exclusively to the March 2 e-mail message from HR, which states that after the plaintiff notified his superior officers, a chief, assistant chief, or captain "would then respond and assume command." The plaintiff interprets this instruction as a requirement that he remain on duty until this response occurred. Massport argues that the e-mail message demonstrated, to the contrary, that the plaintiff was able to leave his shift immediately upon providing notice.

To be sure, at the summary judgment stage we must draw all reasonable inferences in the plaintiff's favor. See Sullivan, 444 Mass. at 38. Reviewing the e-mail message de novo, we agree with Massport that no reasonable inference could be drawn that Massport required the plaintiff to wait to confirm coverage before leaving his shift. The e-mail message begins by stating that Massport was "able to reasonably accommodate [him] leaving right away," and concludes by stating that the prescribed notification procedure "should allow [him] to leave without delay." Viewing the e-mail message in the light most favorable to the plaintiff, it is evident that Massport understood and accepted the urgency of the plaintiff's need for accommodation; we do not see any basis for his conclusion that Massport attached an unspoken, unreasonable condition on his use of the accommodation, effectively defeating its purpose.

6

But even if the e-mail message could be considered ambiguous in this regard, the plaintiff's failure to clarify or otherwise engage with Massport regarding the accommodation is fatal to his claim. An employee's request for an accommodation is the beginning, not the end, of the procedure prescribed by G. L. c. 151B -- it marks the start of a "timely, good faith and interactive process" between employer and employee "to determine an effective, reasonable accommodation." G. L. c. 151B, § 4 (1E) (c). An employer's refusal to participate in the interactive process is a violation of law. See Ocean Spray Cranberries, Inc. v. Massachusetts Comm'n Against Discrimination, 441 Mass. 632, 644 (2004). However, the interactive process contemplates a dialogue. If the plaintiff believed that Massport required him to remain at work until he could confirm coverage, and that this was insufficient to accommodate his condition, he had an obligation to let Massport know. See, e.g., Evans v. Cooperative Response Ctr., Inc., 996 F.3d 539, 547 (8th Cir. 2021), cert. denied, 142 S. Ct. 769 (2022), quoting Mole v. Buckhorn Rubber Prods., Inc., 165 F.3d 1212, 1218 (8th Cir.), cert. denied, 528 U.S. 821 (1999) (employee "cannot expect [employer] to read her mind and know she secretly wanted [accommodation] and then sue [employer] for

7

not providing it").[2]  In response to the March 2 e-mail message, the plaintiff did not ask to clarify or modify the accommodation he was offered; he did not communicate his interpretation of the accommodation to Massport until after litigation had ensued.  By failing to engage his employer in the "interactive process" that G. L. c. 151B requires, the plaintiff deprived Massport of the opportunity to reassess the conditions of the accommodation.

As a result, the record does not support the plaintiff's contention that the accommodation was unreasonable.  As the plaintiff has no reasonable expectation of proving that Massport failed to engage in the interactive process or to make a reasonable accommodation, summary judgment on count two of the complaint was properly granted.  See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).

3.  Retaliatory termination.  The plaintiff also argues the judge erred when she dismissed the plaintiff's retaliatory discharge claim (count four) for failure to establish a causal connection between his termination and his request for an accommodation.[3]  To make out a prima facie case of retaliation

---

[2] "We look to the Federal cases decided under the ADA as a guide to the interpretation of G. L. c. 151B." Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 451 n.6 (2002).

[3] In the Superior Court, the plaintiff also argued that he was wrongfully terminated for engaging in other protected activity.  On appeal, he advances only the portion of his retaliation claim that related to his accommodation request.

8

under G. L. c. 151B, § 4, a plaintiff must prove four elements: (1) the plaintiff engaged in a protected activity, (2) the employer was aware of the protected activity, (3) the employer engaged in an adverse employment action against the plaintiff, and (4) but for the plaintiff's protected activity, the employer would not have taken the adverse action. See Scott v. Encore Images, Inc., 80 Mass. App. Ct. 661, 669 (2011). Massport argues that the plaintiff failed to establish the fourth element -- causation, or a "forbidden motive." Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 406 (2016). To establish this element, "the employer's desire to retaliate against the employee must be shown to be a determinative factor in its decision to take adverse action." Psy-Ed Corp. v. Klein, 459 Mass. 697, 707 (2011).

The plaintiff argues the short length of time between his request to renew his FMLA leave in October 2020 and his termination in December 2020 proves that Massport terminated him in retaliation for that request. "[I]f adverse action is taken against a satisfactorily performing employee in the immediate aftermath of the employer's becoming aware of the employee's protected activity, an inference of causation is permissible." Mole v. University of Mass., 442 Mass. 582, 592 (2004). Because the plaintiff's case for causation rests on temporal proximity alone, he must demonstrate the protected activity and adverse

9

action occurred "very close" in time. Id. at 595, quoting Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001).[4] But even if we accepted the plaintiff's contention that his request for an accommodation and his termination were sufficiently close in time, the plaintiff cannot reasonably be considered a "satisfactorily performing employee." Before submitting his October 2020 request -- to renew an accommodation that had already been in place for a year -- the plaintiff had been investigated, reprimanded, and suspended for showing favoritism based on a personal relationship with a subordinate officer. Although the direct cause for his termination was conduct that occurred within the two-month span in question,[5] his termination

---

[4] The plaintiff argues the motion judge erred in relying on Mole, 442 Mass. at 589, because it no longer controls following the Supreme Judicial Court's decision in Verdrager, 474 Mass. at 406-407. This contention is incorrect both as a matter of fact and as a matter of law. As a matter of fact, the motion judge did not rely on Mole, supra. Her sole citation to the Mole decision was contained in a citation to Verdrager, supra, which quoted from Mole. As a matter of law, Verdrager did not overrule Mole; to the contrary, Verdrager repeatedly cites Mole with approval. See Verdrager, supra at 403, 406-408. If anything, Mole is more relevant to the present case than Verdrager. In Verdrager, supra at 407, 409, the plaintiff established a prima facie case of retaliation using direct evidence of a pattern of discriminatory conduct, in addition to circumstantial evidence arising from temporal proximity. Here, as in Mole, supra at 592, the plaintiff's causation argument relies solely on temporal proximity.

[5] In fact, the first of the three incidents that led to the plaintiff's termination occurred before Massport approved the extension of the plaintiff's accommodation.

was based in part on his prior infractions and warnings. Antiretaliation statutes do "not clothe the complainant with immunity for past and present inadequacies, unsatisfactory performance, and uncivil conduct in dealing with subordinates and with his peers." Jackson v. St. Joseph State Hosp., 840 F.2d 1387, 1391 (8th Cir.), cert. denied, 488 U.S. 892 (1988). Where, as here, "the record, read as a whole, is more consistent with an employer's longstanding desire to improve an employee's behavior than with some sort of vengeful preoccupation," the plaintiff has failed to create a jury issue regarding retaliation. Mesnick v. General Elec. Co., 950 F.2d 816, 829 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992). See id. (where plaintiff remains in company's employ for months after protected activity and is fired after disciplinary infraction, "the sequence of events . . . suggests the absence of a causal connection between the statutorily protected conduct and the adverse employment action, not the converse"). The plaintiff is not entitled to an inference of causation with regard to the October 2020 request.

The plaintiff also argues that he first engaged in protected activity by requesting leave under the FMLA in October 2019, setting off a chain of systematic retaliatory actions that eventually concluded in his termination. However, the temporal link between his October 2019 request and his December 2020

termination is even weaker: "as the elapsed time between [protected activity and adverse actions] becomes greater, the [causal] inference weakens and eventually collapses." Mole, 442 Mass. at 595. Furthermore, the plaintiff offers no evidence to suggest any sanctions he received during this time were related to his requests for accommodation. The record is devoid of evidence that Massport was hostile to his use of an accommodation. This is not a case in which the sequence of events permits a reasonable inference of retaliation. Contrast Verdrager, 474 Mass. at 407 (prima facie case of retaliation established by evidence that employer treated plaintiff, who was a woman, differently from colleagues who were men, stereotyped her, and undermined her over two and one-half year period between complaint of gender discrimination and adverse action).

Here, the plaintiff argues only that his termination came after his requests for accommodation; he does not provide other evidence of hostility relating to his medical condition. "The mere fact that one event followed another is not sufficient to make out a causal link." MacCormack v. Boston Edison Co., 423 Mass. 652, 662 n.11 (1996). Without more, the plaintiff has no reasonable expectation of proving causation, and therefore, no reasonable expectation of establishing a prima facie case of

retaliatory termination under G. L. c. 151B, § 4.[6]  Accordingly, the judge properly granted Massport's motion for summary judgment as to count four.  See <u>Kourouvacilis</u>, 410 Mass. at 717.[7]

<u>Judgment affirmed.</u>

By the Court (Massing,
Sacks & Allen, JJ.[8]),

Clerk

Entered:  November 25, 2025.

---

[6] The plaintiff also argues that "the lower court wrongfully concluded that there were no facts presented that could establish pretext" and that it was an error of law for the judge to conclude that the plaintiff "could not establish pretext." The judge made no such conclusions.  Rather, the judge concluded that the plaintiff did not make out a prima facie case of retaliation; accordingly, she did not advance to the second or third stages of the three-stage burden-shifting paradigm.  See <u>Verdrager</u>, 474 Mass. at 406.  We, likewise, end our discussion here.

[7] We note Massport's request for costs under Mass. R. A. P. 26, as appearing in 481 Mass. 1655 (2019).  Costs are available to the prevailing party as of right under subsection (a) (2) of that rule ("if a judgment is affirmed, costs shall be taxed against the appellant"); under subsections (c) and (d), they are determined and taxed in the trial court.

[8] The panelists are listed in order of seniority.